**F.E.L. PUBLICATIONS, LTD.,**
Plaintiff-Appellee,

v.

**CATHOLIC BISHOP OF CHICAGO,**
Defendant-Appellant.

**and**

**F.E.L. PUBLICATIONS, LTD.,**
Plaintiff-Appellant,

v.

**CATHOLIC BISHOP OF CHICAGO, et
al., Defendants-Appellees.**

Nos. 84–2025, 84–2119.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 1984.

Decided Jan. 31, 1985.

Rehearing and Rehearing En Banc
Denied March 13, 1985.

See also D.C., 506 F. Supp. 1127.

Robert L. Kiesler, Kiesler & Berman, Chicago, Ill., for plaintiff-appellee.

Don H. Reuben, Reuben & Proctor, Chicago, Ill., for defendants-appellants, cross-appellees.

Before BAUER and CUDAHY, Circuit Judges, and DOYLE, Senior District Judge.*

BAUER, Circuit Judge.

Plaintiff F.E.L. Publications, Ltd. (F.E.L.), a publisher of religious music, was awarded $190,400 in actual damages for copyright infringement resulting from the unauthorized use and copying of its hymnals and songsheets by defendant Catholic Bishop of Chicago (Catholic Bishop). Plaintiff appeals this award, challenging the district court's denial of its request for $1.5 million in statutory damages available under the Copyright Act of 1909 [1] in lieu of the actual damages awarded by the jury. The jury also found that defendant tortiously interfered with plaintiff's business subsequent to the filing of the copyright infringement claim and awarded plaintiff $2 million in compensatory damages and $1 million in punitive damages. Defendant appeals this award, challenging the district court's denial of its motion for judgment notwithstanding the verdict on the tortious interference claim. We find that the district court properly exercised its discretion in refusing to grant plaintiff statutory damages for the copyright infringement claim, but that it incorrectly allowed the jury to consider defendant's conduct toward the parishes within the Chicago Archdiocese in reaching its verdict on the tortious interference claim.

## I. FACTS OF THE CASE

F.E.L. publishes religious music of its own and holds exclusive rights to religious

---

* Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin is sitting by designation.

1. Act of July 30, 1947, ch. 391, 61 Stat. 652, 661, *repealed by* Pub.L. 94–553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2541 (codified at 17 U.S.C. § 101).

Section 112 of Public Law 94–553 provides that all causes of action for copyright infringement arising before January 1, 1978 are to be governed by the Copyright Act of 1909. Accordingly, F.E.L.'s suit is governed by that Act, not the current Title 17.

songs from other composers in exchange for royalties on its sales. From the 1960's until 1976, Catholic parishes within the Chicago Archdiocese had used F.E.L.'s hymnals and songsheets. Initially F.E.L. licensed the right to copy its songs at a rate of two cents per copy for the life of the copy. Because of unauthorized copying within the parishes, F.E.L. instituted a new licensing scheme in 1972, the Annual Copying License, which allowed parishes to make unlimited copies of F.E.L. songs for a period of one year at a cost of $100, renewable at the end of each year for another $100. F.E.L. also offered the parishes a Prior Copying Release which would excuse past copyright infringement for a single payment of $500. The parishes' response to these offers was less than overwhelming, and, because of continued infringement, F.E.L. filed suit in September, 1976.

At a hearing on September 30, 1976, the district court gave the Catholic Bishop leave to collect all F.E.L. materials in the parishes and deliver them to F.E.L. The Catholic Bishop's Chancery Office then sent two letters to all the parishes in the Chicago Archdiocese directing them to collect all F.E.L. hymnals and songs, both licensed and unlicensed, so that they could be conveyed to F.E.L. The letters further instructed the parishes that F.E.L. material was not to be used in any way until the litigation was completed. Copies of these letters were sent to many of the bishops and archbishops throughout the United States. In response to these actions, F.E.L. amended its complaint to allege tortious interference with its business relationship with the parishes in the Chicago Archdiocese and nationwide.

At trial, the Catholic Bishop admitted liability for copyright infringement. F.E.L. presented evidence regarding the extent of the infringement, and in closing argument requested actual damages based on the licensing scheme it established in 1972. Specifically, F.E.L. argued that if each of the 238 infringing parishes had obtained F.E.L.'s $100 Annual Copying License for each of the three years for which infringement was proved, and had also obtained a $500

Prior Copying Release for all previous unauthorized copying, F.E.L. would have received $190,400.

The jury returned a verdict for F.E.L., awarding the precise amount it had requested. Nonetheless, F.E.L. filed a post-trial motion requesting that the trial court grant the statutory damages provided for under Section 101(b) of the Copyright Act of 1909 in lieu of the actual damages awarded by the jury, arguing that the jury's award was inadequate. The trial court denied this motion. The jury also returned a verdict for F.E.L. on the tortious interference claims, awarding F.E.L. $3 million in damages. The trial court denied the Catholic Bishop's motion for judgment notwithstanding the verdict on this claim. On appeal, both parties challenge the trial court's denial of their respective motions.

## II. THE COPYRIGHT INFRINGEMENT AWARD

F.E.L. claims that the trial judge abused his discretion by refusing to award statutory damages in lieu of the jury's award for actual damages. F.E.L. also asserts that the trial judge improperly considered the punitive damages awarded for its separate tortious interference claim in determining that the copyright infringement award was just, and that this constituted reversible error. Conversely, the Catholic Bishop contends that statutory damages cannot be awarded in this case because F.E.L.'s actual damages were ascertainable. In support of this contention, the Catholic Bishop argues that the statutory damages provision of Section 101(b) is not to be used as a penalty, *see Universal Pictures v. Harold Lloyd Corp.*, 162 F.2d 354, 378 (9th Cir. 1947); *Sammons v. Colonial Press, Inc.*, 126 F.2d 341, 350 (1st Cir.1942); *Davilla v. Brunswick-Balke Collender Co.*, 94 F.2d 567, 568 (2d Cir.), *cert. denied*, 304 U.S. 572, 58 S.Ct. 1040, 82 L.Ed. 1536 (1938), and that statutory damages are not available when actual damages can be proved.

*See Washingtonian Pub. Co. v. Pearson,* 140 F.2d 465, 466 (2d Cir.1944); *Doehrer v. Caldwell,* 207 U.S.P.Q. 391, 393 (N.D.Ill. 1980); 4 NIMMER ON COPYRIGHT, Appendix 16 at 16–8.

█ Under the Copyright Act of 1909, the copyright holder is entitled to an award of both the actual damages suffered due to the infringement and the amount of the infringer's profits. 17 U.S.C. § 101(b) (1976) (repealed 1976); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 230, 73 S.Ct. 222, 224, 97 L.Ed. 276 (1952). Section 101(b) also provides that the trial judge may, "in lieu of actual damages and profits, [allow] such damages as to the court shall appear to be just" within monetary limits established by the statute. The United States Supreme Court has interpreted Section 101(b) as giving the trial judge broad discretion in determining whether it is more just to allow recovery for actual damages and profits, based on the evidence, or to award statutory damages within the limits provided by the statute. *Woolworth,* 344 U.S. at 231–32, 73 S.Ct. at 224–25; *L.A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100, 106, 39 S.Ct. 194, 195, 63 L.Ed. 499 (1919). In making this determination, the trial judge may consider the difficulty or impossibility of proving actual damages, *Woolworth,* 344 U.S. at 233, 73 S.Ct. at 225; *Douglas v. Cunningham,* 294 U.S. 207, 209, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935), the circumstances of the infringement, *Woolworth,* 344 U.S. at 232, 73 S.Ct. at 225 (*quoting L.A. Westermann,* 249 U.S. at 106, 39 S.Ct. at 195), and the efficacy of the damages as a deterrent to future copyright infringement. *Woolworth,* 344 U.S. at 233, 73 S.Ct. at 225.

█ *Woolworth* further states that the statute not only "compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the trial court is wide enough to permit a resort to statutory damages for such purposes." *Woolworth,* 344 U.S. at 233, 73 S.Ct. at 225. Accordingly, the trial judge has discretion to award stat-utory damages in lieu of or in addition to actual damages for the purpose of deterring future infringement. *See Lottie Joplin Thomas Trust v. Crown Publishers,* 592 F.2d 651, 657 (2d Cir.1978) (statutory damages and actual damages not mutually exclusive remedies); *Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.,* 329 F.2d 194, 196 (2d Cir.1964) (Section 101(b) allows cummulative, not just alternative, recovery for statutory damages and actual damages).

█ We find that in this case the trial judge properly exercised his discretion in refusing to award F.E.L. statutory damages in addition to or in lieu of the actual damages awarded. The evidence showed that unauthorized copying occurred in 238 parishes during the three year period for which F.E.L. was allowed to sue under the statute. The trial judge, at F.E.L.'s request, used F.E.L.'s licensing scheme to calculate the actual damage to F.E.L.'s business caused by the illegal copying. The jury awarded F.E.L. the exact amount it requested and the trial judge, in his order denying F.E.L.'s post-trial motion, stated that F.E.L.'s business was "substantially made whole" by the award. R. 329 (Order of June 8, 1984). Thus, this was clearly not a case where the court needed to resort to statutory damages because proof of actual damages was difficult or impossible. *See, e.g., Lottie Joplin,* 592 F.2d at 657; *Peter Pan,* 329 F.2d at 197. Nor were profits to the Catholic Bishop from the unauthorized copying at issue because F.E.L.'s music was used for ecclesiastical, not commercial, purposes.

Moreover, the record contains testimony concerning the circumstances of the infringement, including testimony as to the structure of the Chicago Archdiocese and its business relationship with F.E.L., the way in which the infringement occurred, and the types of people who actually engaged in the infringement. It is apparent that the trial judge considered these circumstances in determining that it was just to allow only actual damages. *See* R. 329 (Order of June 8, 1984, p. 3). We therefore

find that the trial judge acted within his discretion in determining that the jury's award was just and that additional, statutory damages were not necessary to deter future copyright infringement. *Cf. Woolworth,* 344 U.S. at 233, 73 S.Ct. at 225.

Incongruously, F.E.L.'s dissatisfaction with the amount of the award seems to be based on the trial judge's use of the licensing scheme which F.E.L. proposed as the method to calculate its actual damages. F.E.L. now claims that this method of calculation did not adequately compensate F.E.L. for its losses. F.E.L. argues that it should be granted statutory damages because it would have elected statutory rather than actual damages if it could have sued under the current copyright statute, which allows such election. Further, F.E.L. complains that it was unable to sue for infringement beyond the three year period allowed by the Copyright Act of 1909, and that this was unfair because infringement occurred over a much longer period of time. We fail to see how the trial judge abused his discretion by calculating F.E.L.'s damages according to the method F.E.L. suggested. Moreover, we are concerned only with what F.E.L. did do at trial, not with what it would have liked to have done but was not permitted to do by the statute, and we therefore find no merit to F.E.L.'s argument that the damages awarded were inadequate.

While complaining that its award was unfairly limited by the Copyright Act's three year statute of limitations, F.E.L. argues that the trial judge improperly considered infringement outside of the three year period for which the statute allows a remedy in denying F.E.L.'s motion for statutory damages. Specifically, F.E.L. argues that the trial judge denied its motion based in part on the fact that F.E.L. did not file suit against the Catholic Bishop for several years after gaining knowledge of the copyright infringement, and that this was an unreasonable delay in bringing suit. We find that the trial judge properly based his decision to deny statutory damages on the evidence and exercised his discretion within the parameters established by *Woolworth.*

Moreover, F.E.L.'s delay in filing suit certainly could be characterized as one of the "circumstances of the infringement" referred to in *Woolworth,* 344 U.S. at 232, 73 S.Ct. at 225, and we find no authority which states that this is an improper factor to consider.

■ Finally, it does not appear that the trial judge committed reversible error by improperly considering the punitive damages awarded for F.E.L.'s tortious interference claim in determining that the copyright infringement award was just. F.E.L.'s argument that these damages were improperly considered is based on one sentence in the post-trial order denying its motion for statutory damages. The trial record, however, indicates that the determination was properly based on the factors discussed above, and the post-trial order itself states that "[F.E.L.] received the award of damages in the amount it claimed and as supported by the evidence. As we recall the evidence, [F.E.L.'s] business will be substantially made whole by the award of $190,400." R. 329 (Order of June 8, 1984, p. 3). We therefore find no reversible error or abuse of discretion in the trial judge's refusal to award F.E.L. statutory damages, and we affirm the jury's award of $190,400 for F.E.L.'s copyright infringement claim.

## III. THE TORTIOUS INTERFERENCE AWARD

The Catholic Bishop contends that it was legally impossible for it to tortiously interfere with F.E.L.'s business relationship with the Chicago parishes because the Catholic Bishop and the parishes are the same entity, and that therefore it was error for the trial judge to allow the jury to consider the Catholic Bishop's conduct toward the Chicago parishes in reaching its verdict on F.E.L.'s tortious interference claim. The Catholic Bishop also contends that F.E.L. presented insufficient evidence to allow recovery for tortious interference with F.E.L.'s business outside the Chicago Archdiocese. We agree that it was improp-

er for the jury to base any part of its award on the Catholic Bishop's conduct toward the Chicago parishes, but disagree that the evidence was insufficient to allow recovery for tortious interference with F.E. L.'s business outside Chicago.

■ In order to maintain an action for tortious interference with a business relationship, the plaintiff must establish the existence of a separate and independent business relationship with a third party. *See Hannigan v. Sears, Roebuck & Co.,* 410 F.2d 285 (7th Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 17 (1969); *Republic Gear Co. v. Borg-Warner Corp.,* 406 F.2d 57 (7th Cir.), *cert. denied,* 384 U.S. 1000, 89 S.Ct. 1596, 22 L.Ed.2d 777 (1969). Generally, a party cannot be liable in tort for interfering with its own contract, or even for breaching its own contract. *See Fuller v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1334 (7th Cir. 1983); *DP Service, Inc. v. AM Internat'l,* 508 F.Supp. 162, 167–68 (N.D.Ill.1981). Thus, the Catholic Bishop and the Chicago parishes would have to be separate and independent entities for F.E.L. to recover for tortious interference within the Chicago Archdiocese.

■ Pursuant to special legislation enacted by the Illinois General Assembly in 1861, the Catholic Bishop is organized as a "corporation sole" under Illinois law. *See* Private Laws of Illinois, 22nd General Assembly, at 78 (1861); *Galich v. Catholic Bishop of Chicago,* 75 Ill.App.3d 538, 546, 31 Ill.Dec. 370, 394 N.E.2d 572 (1st Dist. 1979), *cert. denied,* 445 U.S. 916, 100 S.Ct. 1277, 63 L.Ed.2d 600 (1980). As a "corporation sole," the Catholic Bishop owns all the real and personal property in the Chicago Archdiocese. The parishes themselves have no individual capacity to sue or be sued. *See, e.g., Haymes v. Catholic Bishop of Chicago,* 41 Ill.2d 336, 337, 243 N.E.2d 203 (1968); *Catholic Bishop of Chicago v. Village of Palos Park,* 286 Ill. 400, 401, 121 N.E. 561 (1919). In short, the

parishes within the Archdiocese are not legal entities separate and independent from the Catholic Bishop, but are subsumed under the Catholic Bishop. *See Galich,* 75 Ill.App.3d at 546–47, 31 Ill.Dec. 370, 394 N.E.2d 572.

■ The evidence presented at trial reflects this unity. Individual priests had limited, authorized power to purchase a license for F.E.L. material, but the licenses purchased were paid for and owned by the Catholic Bishop. F.E.L. does not dispute that its hymnals and songsheets, although purchased by the parishes, were actually owned by the Catholic Bishop. Nor does F.E.L. dispute that the Catholic Bishop and the Chicago parishes are the same entity; to the contrary, the basis of F.E.L.'s copyright infringement claim is that the Catholic Bishop is liable for all the unauthorized copying of F.E.L.'s material by the Chicago parishes. This position cannot be reconciled with F.E.L.'s contention that the parishes are separate and independent from the Catholic Bishop for the purposes of its tortious interference claim. It was therefore improper for the jury to consider the Catholic Bishop's conduct toward its own parishes in determining the merit of F.E. L.'s tortious interference claim or award any damages to F.E.L. because of that conduct.

F.E.L. contends that, even accepting that they are the same entity, the Catholic Bishop was nonetheless capable of tortiously interfering with its parishes. In support of this contention, F.E.L. cites several cases which hold corporate officers liable in tort for wrongfully inducing the breach of their corporation's contracts. *See Fuller v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1334 (7th Cir.1983); *Swager v. Couri,* 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (Dist.1979); *Worrick v. Flora,* 133 Ill.App.2d 755, 758, 272 N.E.2d 708 (3d Dist.1971). No breach of contract has occurred in this case. The purchase of an F.E.L. license did not require the purchasing parish to actually use F.E.L.'s music.

Nor was a parish required to renew the license after its expiration. Therefore, the cases cited by F.E.L. do not apply to this case.[2]

F.E.L. also based its tortious interference claim on the Catholic Bishop's conduct involving other Catholic dioceses throughout the nation, and F.E.L. presented evidence that these actions damaged its business relationships with these dioceses. The various Roman Catholic dioceses in the United States function as independent entities. Therefore, this part of F.E.L.'s tortious interference claim is not infirm. We are unable to determine from the record before us, however, what amount of the jury's tortious interference award was impermissibly based on the Catholic Bishop's conduct toward its own parishes and what amount, if any, was based on its actions involving dioceses outside Chicago. We therefore vacate the jury's award for tortious interference with F.E.L.'s business and remand for proceedings consistent with this opinion.

## IV. CONCLUSION

The denial of F.E.L.'s motion for statutory damages was not an abuse of the trial judge's discretion. Therefore, the jury's award of $190,400 for F.E.L.'s copyright infringement claim is affirmed. The jury's award of $2 million in compensatory damages and $1 million in punitive damages for F.E.L.'s tortious interference claim, however, is vacated because the jury reached its verdict after improperly considering the Catholic Bishop's conduct toward its own parishes.

2. F.E.L. also makes an amorphous public policy argument to support its contention, citing cases concerning corporate criminal conspiracy, *United States v. Consolidated Coal Co.*, 424 F.Supp. 577 (S.D.Ohio 1976), conspiracy to discriminate, *Novotny v. Great American Federal Savings & Loan Ass'n*, 584 F.2d 1235 (3d Cir.1978), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), and conspiracy to violate the Sherman Antitrust Act. *Copperweld Corp. v. Independence Tube Corp.*, — U.S. —, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). We fail to see

how these cases have any bearing on this matter and will not address them.