**VIDEO VIEWS, INC.,**
Plaintiff–Appellant–Cross–Appellee,

v.

**STUDIO 21, LTD., and Joseph Sclafani,**
Defendants–Appellees–Cross–Appellants.

Nos. 89–2798, 89–2799.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1990.

Decided Feb. 8, 1991.

Rehearing Denied April 16, 1991.

Michael J. Kralovec, Feiwell, Galper & Lasky, David A. Axelrod, Chicago, Ill., for plaintiff-appellee.

Robert M. Ward, Stephen F. Sherry, Allegretti & Witcoff, Chicago, Ill., for defendants-appellants.

Joseph Sclafani, Addison, Ill., pro se.

Before CUMMINGS, COFFEY, Circuit Judges, and GORDON, Senior District Judge.[*]

MYRON L. GORDON, Senior District Judge.

Video Views, Inc., the appellant and cross-appellee, is a corporation engaged in the business of sub-licensing "adult films" for video arcade exhibition on the premises of "adult entertainment businesses." The appellees and cross-appellants (who will be referred to collectively as "Studio 21") are Studio 21, Ltd., and its principal shareholder, Joseph Sclafani.

Video Views brought this action under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., alleging that Studio 21 had been infringing its exclusive right to perform certain adult films publicly. After a six-day trial, the jury returned a verdict finding that Studio 21 had willfully infringed Video Views' copyrights in two of the seven adult films involved in the action. The district court granted Studio 21's motion for a judgment notwithstanding the verdict on the issue of willfulness, but awarded Video Views statutory damages in the amount of $5,000 for each infringement. Both parties raise a number of issues on their respective appeal and cross-appeal. We affirm.

I.

Video Views is engaged solely in the business of licensing what have come to be known as "adult films" for display in video arcades at "adult entertainment business-es," enterprises commonly referred to as "adult book stores." Video Views does not create adult films; it enters into sub-licensing agreements with adult book stores, such as Studio 21, which provide their customers with the opportunity to view adult films in viewing rooms located on premises. Video Views must first obtain from the respective copyright owners the exclusive right to perform those films publicly in video arcades. See 17 U.S.C. §§ 101, 106(4). Video Views obtains that particular strand in the bundle of property rights designated by the Copyright Act by entering into licensing agreements with the respective copyright owners (typically the producers of the films). In effect, the copyright owners grant Video Views a limited exclusive right to sub-license the video arcade exhibition of particular adult films, in video cassette format, on business premises.

Studio 21 operates an "adult entertainment business" in Addison, Illinois. It provides video facilities of the type that Video Views would ordinarily sub-license. During the time period relevant to this action, Joseph Sclafani was the owner of all shares in Studio 21. He served as its president, and, along with his wife, Theresa, discharged other responsibilities vital to the operation of Studio 21, such as ordering goods, bookkeeping, and making personal decisions. Studio 21 built six "video arcade booths" on its premises wherein customers view adult films (such as those that had been licensed to Video Views) by the use of video arcade equipment operated by tokens. Customers could purchase tokens, for one dollar each, which would entitle them to view five minutes of selected adult films. At the time the customers purchase the tokens, they also notify the responsible Studio 21 employee of the film they would like to view. Studio 21 has a large inventory of these films, which are also available for home rental or purchase. Apparently, Studio 21 is aware of the scope of the copyright laws: on occasion, it learns from

---

[*] Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

the owner of the exclusive public performance right that it has no authority to perform a particular video cassette in its video booths. As to such films, Studio 21 places a prominent "for sale or rental only" sticker on the video cassette to alert its employees. The alternative would be for Studio 21 to enter into a sub-licensing agreement to acquire that aspect of the public performance right from its owner.

When Video Views came to suspect that Studio 21 was providing its customers with the opportunity to view on its premises films that had been licensed to Video Views, Jerry Greenberger, Video Views' president, approached Mr. Sclafani, seeking to enter into a sub-licensing agreement with Studio 21. Studio 21 declined to do so. The filing of this action followed, initially resulting in the entry of a preliminary injunction barring Studio 21 from infringing Video Views' exclusive rights.

At trial, Video Views sought money damages for Studio 21's alleged willful infringement of the following films: *Nothing to Hide, Baby Cakes, Black on White, Women in Love, Chocolate Candy, Doctor Desire,* and *Our Major is Sex.* It sought statutory damages, an option available to it under the Copyright Act, *see* 17 U.S.C. § 504(c), instead of electing to prove and recover actual damages and Studio 21's profits, *see* 17 U.S.C. § 504(b). It also made a motion to strike Studio 21's demand for a jury trial, which was denied. The issues of liability and willfulness were tried to a jury. During the trial, William Mahr, a private investigator hired by Video Views, testified that he had viewed the films *Nothing to Hide* and *Baby Cakes* in a video arcade booth at Studio 21 on April 12, 1984. Mr. Greenberger also testified that he had visited Studio 21 on April 5, 1985, when he purchased 35–40 tokens and viewed the other five films involved in this action (coincidentally, the ones that Mr. Mahr had not). Although Theresa Sclafani testified that she saw Mr. Greenberger at Studio 21, another Studio 21 employee, Noble Butler, testified that he had been working that day but that he had never seen anyone purchase *that* many tokens.

The jury found that Studio 21 had willfully infringed the films *Nothing to Hide* and *Baby Cakes,* but had not infringed the other five films. Based upon the jury verdict, the district court assessed statutory damages pursuant to § 504(c)(1) ($5,000 per infringement) and increased statutory damages pursuant to § 504(c)(2) ($10,000 per infringement). The court ordered the entry of judgment in the total amount of $30,000. However, upon Studio 21's motion for judgment notwithstanding the verdict, the district court found the jury's verdict on the issue of willfulness to be unsupported by the evidence and vacated the award of any increased statutory damages. The district court also concluded that neither party had "prevailed" and declined to award either litigant costs and attorney's fees. This appeal followed.

## II.

### A.

Section 504 of the Copyright Act, 17 U.S.C. § 504, provides the copyright owner with an election between two forms of monetary recovery from a copyright infringer. As in ordinary tort cases, the copyright owner is entitled to prove and recover its actual damages and profits, pursuant to § 504(b). In addition, § 504(c) grants an alternative form of recovery available to the copyright owner:

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum not less than $250 [$500] or more than $10,000 [$20,000] as the court considers just....

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than

$50,000 [$100,000]. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware of and had no reason to believe that his or her acts constituted an infringement of copyright, the court it [sic] its discretion may reduce the award of statutory damages to a sum of not less than $100 [$200]....

17 U.S.C. § 504(c) (1976) (brackets show section as amended October 31, 1988).

On its appeal, Video Views challenges the granting of a jury trial, contending that the entire action should have been tried without a jury because it sought only statutory damages. Studio 21 urges that the seventh amendment to the Constitution required a jury trial in this copyright infringement action, despite the fact that Video Views sought statutory instead of actual damages.

This question has been the subject of some conflict among (and within) the circuit courts of appeal that have touched upon it, complicated by the fact that these decisions have been under both the Copyright Act of 1976 and the now-repealed Copyright Act of 1909. *See, e.g., Chappell & Co. v. Palermo Cafe*, 249 F.2d 77 (1st Cir.1957) (no right to a jury trial under 1909 Act); *Mail & Express Co. v. Life Publishing Co.*, 192 F. 899 (2d Cir.1912) (right to a jury trial under 1909 Act); *Oboler v. Goldin*, 714 F.2d 211 (2d Cir.1983) (per curiam) (no right to a jury trial under the 1976 Act); *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117 (4th Cir.1981) (right to a jury trial under the 1976 Act); *Twentieth Century Music Corp. v. Frith*, 645 F.2d 6, 7 (5th Cir.1981) (per curiam) (no right to a jury trial under either the 1909 Act or the 1976 Act); *National Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 729 n. 4 (8th Cir.1986) (noting the conflict between circuits but declining to address the question); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1177 (9th Cir.1977) (under the 1976 Act, statutory damages determined by judge, not the jury); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 852– 53 (11th Cir.1990) (no right to a jury trial under the 1976 Act).

Because § 504(c) does not resolve the question, we must address the constitutional issue as to entitlement to a jury trial. *Cf. Lorrillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978); *see also Tull v. United States*, 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, n. 5, 95 L.Ed.2d 365 (1986) (when statute is silent there is no recourse but to address the constitutional issue); *Curtis v. Loether*, 415 U.S. 189, 192, n. 6, 94 S.Ct. 1005, 1007, n. 6, 39 L.Ed.2d 260 (1974). There is little question that the right to a jury trial exists in a copyright infringement action when the copyright owner endeavors to prove and recover its *actual* damages, as determined by a jury, pursuant to § 504(b). *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir.1946) (Frank, J.) (1909 Act). It is also clear that it is for the district court and not for a jury to determine the appropriate award of statutory damages, within the limits prescribed in §§ 504(c)(1) and (2), respectively. *But see Gnossos Music*, 653 F.2d at 120 (jury to assess statutory damages within the limits prescribed). However, § 504 is completely and unambiguously silent on our central issue: whether there is a right to a jury trial on the underlying factual issues of infringement and willfulness when the plaintiff opts for statutory damages instead of actual damages. *See Gnossos Music*, 653 F.2d at 119 (noting that the language is "not sufficiently clear to mandate *either* a bench trial or jury trial").

The seventh amendment to the Constitution provides that "In all suits at common law, where the value in controversy exceeds twenty dollars, the right to a jury trial shall be preserved...." *See also* Rule 38(a), Federal Rules of Civil Procedure ("The right to a trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."). The Supreme Court has determined that whether the right to a jury trial has been "preserved" in a given case "depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396

U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). In *Ross*, the court suggested that:

> [T]he "legal" nature of an issue is determined by considering, first, the pre-merger [of courts of law and courts of equity through the adoption of the Federal Rules of Civil Procedure in 1938] custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries.

396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10 (noting that the first consideration may require "extensive and abstruse historical inquiry").

The determination of the factual issues of infringement and willfulness in a copyright infringement action do not appear to be "beyond the practical abilities and limitations of juries," and, thus, this matter must be settled by the remaining two considerations. *See Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (jury trial available if the action "involves rights and remedies of the sort typically enforced in an action at law").

At common law, copyright infringement created a cause of action entitling the copyright owner to a recovery "analogous to recovery for a number of tort actions recognized at common law." *Gnossos Music,* 653 F.2d at 120 (citations omitted). A qualifying plaintiff who asserted both a claim for copyright infringement *and* the inadequacy of a remedy at law might have been entitled to proceed before a court of equity. However, for all other plaintiffs—namely those who could not assert the inadequacy of a remedy at law—remedies for copyright infringement "traditionally would have been enforced at law." *Gnossos Music,* 653 F.2d at 120. There is no reason to believe that, at common law, the injured copyright owner would have been treated far differently from the trademark owner. *See Dairy Queen v. Wood,* 369 U.S. 469 & n. 15, 82 S.Ct. 894 & n. 15, 8 L.Ed.2d 44 (1962) (Trademark Act preserved right to jury trial) (*citing Arnstein v. Porter,* 154 F.2d 464 (2d Cir.1946) (a *copyright* case)).

Thus, actions both for copyright and trademark infringement may fairly be viewed as actions at law to vindicate a tortious interference with a property right, namely that of intellectual property. However, we acknowledge the fact that Congress has seen fit to provide somewhat different statutory remedies for each.

The remedy that Congress has provided in § 504(c) defies blanket characterization as either "equitable" or "legal." In some cases, the statutory damage award will be intended to approximate the actual damages suffered; in others, as in those cases where only minimum statutory damages are sought, it may not. In determining the measure, within the specified limits, of statutory damages to be awarded a copyright owner, the district court may consider various factors such as "the difficulty or impossibility of proving actual damages, ... the circumstances of the infringement, ... and the efficacy of the damages as a deterrent to future copyright infringement." *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago,* 754 F.2d 216, 219 (7th Cir.) (decided under the 1909 Act) (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 232–33, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952), and *Douglas v. Cunningham,* 294 U.S. 207, 209, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935)), *cert. denied,* 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985). *See also Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir.1978) (court will resort to statutory damages when proof of actual damages is "virtually impossible").

However, it cannot be said that statutory damages are "equitable" in nature rather than "legal" in nature simply because the copyright owner is relieved of the necessity of proving its actual damages. The availability of statutory damages is premised on a far less demanding standard than the "inadequacy of an adequate remedy at law" standard; it is premised simply upon the copyright owner's election—for whatever reason. We do not overlook the possibility that the requirement that equitable relief be made available only where there is no adequate remedy at law was intended "to guard the right of trial by jury pre-

served by the Seventh Amendment and to that end it should be liberally construed." *Ross*, 396 U.S. at 539, 90 S.Ct. at 738–39 (*quoting Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932)).

The goal of deterrence that statutory damages have been thought to serve "reflects more than a concern to provide equitable relief." *Tull*, 481 U.S. at 423, 107 S.Ct. at 1838. This court has recently upheld as "wholly proper" an award of statutory damages that the district judge imposed to "penalize" the infringer for "illbegotten profit and to deter future violations." *Illinois Bell Telephone Co. v. Haines and Co.*, 905 F.2d 1081, 1089 (7th Cir.1990). To the extent that it is correct to view statutory damages as some sort of a penalty, there is undoubtedly still greater justification for characterizing them as a "legal" remedy. *Tull*, 481 U.S. at 422, 107 S.Ct. at 1838 ("[r]emedies intended to punish culpable individuals . . . were issued by courts of law, not courts of equity"); *Curtis*, 415 U.S. at 197, 94 S.Ct. at 1010 (punitive damages are "legal" rather than "equitable"). Moreover, the discretion that § 504(c) vests with district judges to determine the amount of an award of statutory damages does not parallel the types of discretion that the Supreme Court has termed "equitable." *Curtis*, 415 U.S. at 197, 94 S.Ct. at 1010 (noting the "equitable" nature of a statute that grants a district judge the discretion to award backpay in an employment discrimination action).

■ We do not think that by vesting district judges with flexibility in determining the appropriate award of statutory damages for copyright infringement, Congress intended to divest completely either copyright owners or alleged infringers of their right to a jury trial. *Cf. Tull*, 481 U.S. at 427, 107 S.Ct. at 1840 (Clean Water Act vested district judge with the authority to assess civil penalties for noncompliance but entitled defendants to jury trial on issue of liability). We believe that the statutory damage provisions of the Copyright Act were intended to relieve the aggrieved

copyright owner of the task of proving its actual damages, not to relieve the alleged infringer of its right to a jury trial on other factual issues, such as infringement, or in appropriate cases, willfulness. We conclude that, when monetary damages of any kind are sought, the issues of infringement and willfulness are for the jury to resolve. The fact that the district judge is given the responsibility to assess the statutory damages does not, without more, transform the proceeding—one in which monetary relief is sought—from one legal in nature to one equitable in nature.

The most compelling opposing argument is judicial economy; indeed, we concede that jury trials may result in delays in the administration of justice in particular cases. This appears to be an implicit consideration in those decisions that have deemed there to be no right to a jury trial when the copyright owner seeks only "minimum" statutory damages, incidental to equitable relief. *See, e.g., Twentieth Century Music Corp. v. Frith*, 645 F.2d 6 (5th Cir.1981) (per curiam). However, we think to deny the right to a jury trial in those instances would fly in the face of *Beacon Theatres Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959), where the Supreme Court cautioned that the right to a jury trial could not be lost by characterizing a "legal" claim as "merely incidental to" an equitable claim. Moreover, apart from the fact that the Supreme Court has recently cautioned that considerations of judicial economy are "an insufficient basis for departing from our longstanding commitment to preserving a litigant's right to a jury trial," *see Lytle v. Household Manufacturing, Inc.*, —— U.S. ——, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504 (1990), we do not think our ruling overlooks those considerations.

■ The evidentiary record upon which an award of statutory damages is based need not be developed to the same extent as one in which an award of actual damages is sought. If a copyright owner seeks only "minimum" statutory damages, the record on damages need not be developed at all. If a greater amount of statutory

damages is sought, the district court may make the appropriate award when the evidentiary record adequately supports that determination. *Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir.1983) (district court that has before it sufficient evidence to form a basis for statutory damages may award them). The district court is accorded wide and almost exclusive discretion in determining the size of the statutory damage award. *Douglas*, 294 U.S. at 210, 55 S.Ct. at 366. However, concerns of due process and the opportunity for meaningful, if limited, appellate review contemplate that the district court would provide *some* explanation of the factual findings that underlie this exercise of discretion to award greater than minimum statutory damages.

We disagree with Video Views' contention that Studio 21 was not entitled to a jury trial because the action was one for statutory damages under § 504(c). Had Video Views sought only an injunction, Studio 21 certainly would have had no entitlement to a jury trial. Here, however, Video Views sought increased statutory damages pursuant to § 504(c)(2). Studio 21 vigorously (and not unsuccessfully) defended against Video Views' allegations of willful infringement. After Video Views' motion for a summary judgment was denied, there remained jury questions of infringement and willfulness. Before it was entitled to recover *any* damages, Video Views was obligated to convince the jury that Studio 21 had infringed one or more of the seven adult films involved in this action. *See* 17 U.S.C. §§ 106(4), 501. The district court correctly submitted the factual questions of infringement and willfulness to the jury, and based on its verdict, determined the appropriate award of statutory damages, as directed by § 504(c).

### B.

At trial, Video Views proffered evidence suggesting that Studio 21 had infringed its exclusive right to perform seven adult films publicly in video cassette format at "adult entertainment centers." The jury partly disagreed, finding that Studio 21 infringed only two of those films. On this appeal, Video Views contends that the district court erred by denying its motion for a new trial on the issue of infringement. It urges that we upset the jury's determination that five of the seven adult films at issue had not been infringed as being against the manifest weight of the evidence. In its cross-appeal, Studio 21 contends that Video Views' evidence failed to present a jury question on the issue of infringement.

Section 501(a) of the Copyright Act provides that

> Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright.

17 U.S.C. § 501(a). Section 106 of the Act, entitled "Exclusive rights in copyrighted works," provides:

> Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (4) in the case of ... motion pictures and other audiovisual works, to perform the copyrighted work publicly....

17 U.S.C. § 106(4). Section 101 of the Act defines "audiovisual works" as

> ... works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

17 U.S.C. § 101.

■ To prevail in an action alleging the infringement of the exclusive right to perform publicly a copyrighted work, a plaintiff is obligated to prove the following: (1) that it was the owner or assignee of the particular right asserted; (2) that the defendant either publicly performed or authorized the public performance of the work; and (3) that the defendant did not have permission to perform the work. *See, e.g.,*

*Paramount Pictures Corp. v. Sullivan,* 546 F.Supp. 397, 398 (D.Me.1982).

In this case, Studio 21 did not dispute that each of the films were original works entitled to the copyright protection. Nor did it assert that the formalities of the Copyright Act had not been satisfied. It did not claim to have had any license or other authorization to perform these films publicly. The infringement question turned upon whether Video Views was the "owner" of the rights it claimed and whether Studio 21 had performed the films publicly.

The initial determination is whether Video Views was the "owner" of the property right it sought to enforce against Studio 21. Section 201(d) of the Copyright Act provides for the transfer of ownership of any or all of the exclusive rights comprised in a copyright:

> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law....
>
> (2) ... The owner of any particular exclusive right is entitled, to the extent of that right, to all protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d). While Video Views was not the "copyright owner" of the adult films involved in this action, it claimed that it had entered into exclusive licensing agreements with the copyright owners of those films. By virtue of each of those agreements, Video Views asserted that it was the "owner" of the exclusive right—allegedly infringed by Studio 21—to perform publicly those films in video arcades.

■ It is clear that a licensing agreement cannot *create* property rights enforceable under the copyright laws. 17 U.S.C. § 201(d)(2) (limiting protections to "the extent of th[e particular] right"); *cf. F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago,* 506 F.Supp. 1127, 1134 (N.D.Ill.1981), *rev'd on other grounds,* 754 F.2d 216 (7th Cir.1985). A licensing agreement is an assignment of preexisting property rights, in this case, rights created under the Copyright Act of 1976. Any other obligations or liabilities created by the licensing agreement exist only between the parties to that agreement—Video Views and the copyright owners of the respective films. Studio 21 concedes the existence of these licensing agreements but, by virtue of its cross-appeal, rigorously challenges the scope of those agreements—in particular, those pertaining to the two films it was found to have infringed, *Nothing to Hide* and *Baby Cakes.*

On July 1, 1983, Video Views executed separate licensing agreements with Cal Vista International, Ltd., and Essex Distributing, Inc. (which will be referred to as the "Cal Vista" and "Essex" licenses, respectively). Each license granted Video Views ownership of the exclusive right to sub-license the "video arcade exhibition" of numerous adult films. The Cal Vista license, which governed the film *Nothing to Hide,* was recorded with the Copyright Office on February 2, 1984. In pertinent part, it provided (with emphasis added):

> NOTE: The rights granted to LICENSEE hereunder for on-premises video software exhibition to patrons of adult entertainment businesses is to . have those adult entertainment businesses that have adult motion picture arcade-type viewing facilities, and not to video theatres.
>
> "Adult motion picture arcade facilities" are defined as any place to which the interested adult public is permitted or invited, wherein coin or slug operated, or electronically, electrically or mechanically controlled image-producing devices utilizing the works in video software format are *maintained to show images to* two (2) [to five (5) ] patrons per image-producing device at any one time.

The bracket material was lined out on the original agreement.

The Essex license, governing the film *Baby Cakes,* and recorded with the Copyright Office on March 27, 1984, provided in pertinent part (with emphasis added):

> "Adult motion picture arcade facilities" are defined as any place to which the interested adult public is permitted or invited; wherein coin or slug operated, or

electronically, electrically or mechanically controlled image-producing devices utilizing the Works in video software format are *maintained to show images to* two (2) to five (5) patrons per image-producing device at any one time.

■ Studio 21 urges that the licensing agreements apply only when two persons, in the case of the Cal Vista license, and from two to five persons, in the case of the Essex license, occupy the type of facility described for the purposes described. It may be that these licenses are neither models of clarity or draftsmanship; we offer no opinion on that subject. Nevertheless, we decline to adopt the crabbed construction of those agreements urged by Studio 21. We conclude that the licensing agreements describe the capacity of the "place" where the films would be shown and are not so narrow in scope as Studio 21 urges. We have little trouble concluding that Studio 21's viewing booths are the type of "facilities" contemplated by a reasonable construction of the license: namely "adult motion picture arcade facilities ... maintained to show images to" two to five persons. That the booths may, at a particular time, in fact be occupied by one person or six persons does not alter the fact that the booths are *maintained* to accommodate two to five persons.

The remaining question is whether the works had been "performed publicly" by Studio 21 within the meaning of the Copyright Act. Once again, we begin with the language of the Copyright Act, namely § 101 of the Act, which generally provides that to "perform" a copyrighted work is ... to recite, render, play, dance, or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible.

17 U.S.C. § 101. That section of the Act further provides that to perform a copyrighted work "publicly" means to

(1) to perform it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of family and its social acquaintances is gathered; or

(2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or different times.

17 U.S.C. § 101. There is no question that the films would be "performed" if displayed in one of Studio 21's video arcade booths. Studio 21 urges on its cross-appeal that there has been no infringement because there has been no *public* performance, *see* 17 U.S.C. § 106(4).

Jury Instruction #22 accurately reflected the generally accepted and unexceptional law on this subject. *See, e.g., Columbia Pictures Industries, Inc. v. Aveco, Inc.,* 800 F.2d 59 (3d Cir.1986) (showing of rented video cassettes of copyrighted films in private booths on defendant's premises constituted an infringing public performance); *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.,* 749 F.2d 154 (3d Cir. 1984) (same). That instruction, as delivered to the jury, provided as follows:

To perform a work publicly means to perform or display it at a place open to the public. A work may be performed or displayed in a private setting, such as a booth, and still be a public performance if the booth itself is in a place open to the public.

Trial Transcript, at 558.

The record discloses that Studio 21 never lodged an objection to that instruction. Accordingly, as Video Views urges, Studio 21 has waived its right to challenge the subject matter of that instruction on this appeal. *Parts and Electric Motors, Inc. v. Sterling Electric, Inc.,* 826 F.2d 712, 716 (7th Cir.1987); *cf. W.T. Rogers Co. v. Keene,* 778 F.2d 334, 344 (7th Cir.1985). In an attempt to overcome the contention of waiver, Studio 21 contends that there has been a change in the law since the time of the trial, citing *Columbia Pictures Industries, Inc. v. Professional Real Estate In-*

*vestors, Inc.*, 866 F.2d 278 (9th Cir.1989) (showing in a guest's hotel room of video disk rented from hotel's gift shop of copyrighted films did not constitute a public performance). It suggests that we are obligated to apply the "new" law on this appeal and that the change in the law excuses its waiver.

■ We find that *Professional Real Estate Investors* did not "change" the law. Indeed, *this* circuit has not previously addressed the subject matter of Jury Instruction # 22. At the time the jury instruction was cast, the courts that had examined the issue had directed their attention to the nature of the business where the alleged infringement of the public performance right occurred. *Columbia Pictures Industries, Inc. v. Aveco, Inc.*, 800 F.2d 59 (3d Cir.1986); *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154 (3d Cir.1984). We agree with the rationale of both *Redd Horne* and *Aveco*: the proper inquiry is directed to the nature of the place in which the private video booths are located, and whether it is a place where the public is openly invited. This is compatible with our view that the Copyright Act contemplates a broad interpretation of the concept of "public performance." *See David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 758 (S.D.N.Y.1988). To the extent that *Professional Real Estate Investors* may be viewed to contradict the rule established by *Redd Horne* and *Aveco*, we decline to follow it. The jury instruction delivered was a correct pronouncement of the applicable law.

The foregoing demonstrates that the case posed factual questions properly submitted to the jury. The district court's denial of Studio 21's motion for a new trial will not be overturned unless "exceptional circumstances show a clear abuse of discretion." *Forrester v. White*, 846 F.2d 29, 31 (7th Cir.1988) (quoting *Spanish Action Committee v. Chicago*, 766 F.2d 315, 321 (7th Cir.1985)). We will not set aside a jury verdict unless it is against the manifest weight of the evidence. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940).

Video Views urges that the verdict of noninfringement on five of its films was against the manifest weight of the evidence. We need not dwell long on that matter. The jury appears to have accepted the testimony of a private investigator, William Mahr, who stated that he briefly viewed portions of two of the films, *Nothing to Hide* and *Baby Cakes*, at Studio 21. Mr. Greenberger's testimony that he purchased 35–40 tokens at the store and viewed nearly that many films, including each of those involved in this action, was contradicted by a Studio 21 employee, Noble Butler; the jury was entitled to reject Mr. Greenberger's version. The jury's determination that *Nothing to Hide* and *Baby Cakes* were infringed and none of the other films were is by no means against the manifest weight of the evidence.

### C.

The jury determined that Studio 21 had willfully infringed Video Views' exclusive public performance right in the films *Nothing to Hide* and *Baby Cakes*. Based on that verdict, the district court determined an award of increased statutory damages in the amount of $10,000 for each film to be appropriate and entered judgment accordingly. Studio 21 made a motion for judgment notwithstanding the verdict on the issue of willfulness. The court granted Studio 21's motion and vacated its judgment awarding increased statutory damages. Video Views contends that this was error.

■ To recover increased statutory damages, Video Views was obligated to prove that the infringement was willful, *see* 17 U.S.C. § 504(c)(2). The determination of willfulness, which requires the assessment of the defendant's intent, is an issue of fact. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir. 1988). An infringement is "willful" if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right. *See International Korwin Corp.*, 855 F.2d at 380 & n. 10 (*quoting Fitzgerald Publishing Co. v. Baylor Publishing Co.*,

807 F.2d 1110, 1115 (2d Cir.1986) (collecting cases)). The determination whether a particular infringer acted willfully is left to the trier of fact, although a finding of willfulness should ordinarily be made where the defendant knows that its conduct is an infringement or is reckless in not knowing that fact.

Accordingly, willfulness would ordinarily be demonstrated where the infringer is provided oral or written notice of its infringing conduct by the copyright owner, yet "passe[s] the matter off as a nuisance." *International Korwin Corp.*, 855 F.2d at 381. We emphasize the principle that "defendants must not be able to sneer in the face of copyright owners and copyright laws." *International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 659 (N.D.Ill. 1987), *aff'd*, 855 F.2d 375 (7th Cir.1988). Increased statutory damages may be necessary in a particular case to prove that it "costs less to obey the copyright laws than to violate them," *International Korwin Corp.*, 855 F.2d at 383 (*quoting International Korwin Corp.*, 665 F.Supp. at 659 (quotation omitted)), although the failure of the infringer to negotiate for a license with the copyright owner, without more, does not require a finding of willfulness.

In this case, the district court was entitled to grant Studio 21's motion for a judgment notwithstanding the verdict on the issue of willfulness "only if, when the evidence is viewed in the light least favorable to the moving party, the verdict is unsupported." *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1163 (7th Cir.1987). A verdict of willful infringement would be "unsupported" only if the record contains no evidence that could have supported the jury's finding of willfulness.

■ This case posed factual questions bearing on the *quality* of the notice of infringement presented to Studio 21 by Video Views. It is undisputed that Video Views did notify the defendant by letter of its rights in *some* of the adult films involved in this action—but the only two films that were found to have been infringed were never specifically listed in the letter. The district court specifically identified that letter in its written decision, where it identified the difficulty with Video Views' evidence of willfulness:

> The letter was clear: "Video Views, Inc., presently owns or has acquired exclusive rights [in] ... all copyrighted feature-length and/of loop format motion picture films ... from the following companies: ..." The letter then listed 12 companies. None of these companies produced or distributed the two movies in question.

Mem. Op., at 3 (brackets and omitted material in original).

In general, evidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness; it is not the only way that willfulness can be established. Other factors may demonstrate that the alleged infringer should have known that its conduct was infringement. That is, one who undertakes a course of infringing conduct may neither sneer in the face of the copyright owner nor hide its head in the sand like an ostrich. Nevertheless, we agree with the district court that the record is bare of any specific evidence supporting the jury's determination that Studio 21's infringement of the films *Nothing to Hide* and *Baby Cakes* was willful.

### D.

Studio 21 also contends that the district court should have awarded it costs and fees. Section 505 of the Copyright Act provides as follows:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or any officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

We begin our analysis by emphasizing that the Copyright Act *firmly* commits this decision to the discretion of the district judge.

■■ This court has only recently observed that attorneys fees "have been awarded for the purposes of encouraging the assertion of colorable copyright claims, deterring infringement, and making the plaintiff whole." *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir.1989) (citation omitted), *cert. denied*, ⸺ U.S. ⸺, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990). In this case, however, it is the defendant that claims an entitlement to costs, including attorney's fees. In assessing the validity of that claim, we recognize, as did the district judge, that there remains some room for debate over the definition of "prevailing party" within § 505. *Cf. Ustrak v. Fairman*, 851 F.2d 983 (7th Cir.1988) (under the Civil Rights Act "a partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus [certain other] related grounds"). Under the Copyright Act, the "prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Warner Brothers, Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir.1989) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). We agree with the district court's finding that neither Video Views, who prevailed on but two of its seven infringement claims, nor Studio 21, who wound up on the wrong end of a $10,000 judgment, can be deemed the "prevailing" party.

■ We also agree with the district court's conclusion that even a prevailing defendant must demonstrate "something more" than the fact that it prevailed to recover costs and fees—even if the copyright owner's action can fairly be called an "unmitigated failure." *See Sherry Manufacturing Co. v. Towel King of Florida, Inc.*, 822 F.2d 1031, 1035 n. 5 (11th Cir. 1987). In order not to disserve the remedial purposes underlying the Copyright Act, a prevailing defendant should not be awarded its costs or fees unless it can also demonstrate that the copyright owner brought the action in bad faith or that the action was frivolous. *See Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir.1986); *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 322 (9th Cir.1987); *cf. Official Aviation Guide Co. v. American Aviation Associates*, 162 F.2d 541, 543 (7th Cir.1947) (declining to award costs and fees to a prevailing defendant where the action had been prosecuted in good faith).

Video Views did not proceed in bad faith and did not assert frivolous claims. In our view, the district court correctly refused to award Studio 21 its costs and attorney's fees.

### III.

The parties have raised other issues, none of which merit any in-depth discussion. An example is Studio 21's contention that the district court should have declared a mistrial during voir dire after *its* attorney asked the prospective jurors the following question:

> Let me mention something else, one of the defendants is of Italian extraction, of Italian decent [sic], and is excitable, somewhat tempermental, does that fact somehow affect the ability of any of you to render a fair and impartial judgment in this case.

Trial Transcript, at 64.

This clumsy reference to an ethnic stereotype had no relation to the merits of this case. Nevertheless, after the jury panel had been selected, the district judge cautioned its members that they "must not be influenced to any degree by any personal feeling of sympathy for or prejudice against the parties, their counsel or their witnesses." Trial Transcript, at 67. Shortly afterward, one of the jurors, offended by the comment of the defendant's counsel, met with the judge in chambers (but on the record). After meeting with that juror, the judge became satisfied that the juror had not discussed the matter with other members of the jury panel. However, in the interests of justice, and prior to the beginning of the trial, that juror was excused. Studio 21 then made a motion for a mistrial, which the court denied.

On the record presented by this case, we find no merit in Studio 21's contention that the district court erred in deciding not to grant the motion for a mistrial. We agree with Video Views' contention that Studio 21's trial counsel should not lightly be relieved of the effect of *its* tactical decision to proffer an objectionable statement. Even if we did not, we would be unable to find fault with the district court's considered view that the removal of the offended juror from the panel cured any possible prejudice.

AFFIRMED.