**GUND, INC., Plaintiff,**

v.

**SMILE INTERNATIONAL, INC., Defendant.**

**No. 88 C 2367 (EHN).**

United States District Court, E.D. New York.

Aug. 22, 1988.

Gottlieb, Rackman & Reisman, P.C., New York City (Jane Shay Wald and George Gottlieb, of counsel), for plaintiff.

Ruskin, Schlissel, Moscou, Evans & Faltischek, P.C., Mineola, N.Y. (Robert L. Sherman, of counsel), for defendant.

### MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this action claiming that defendant had infringed plaintiff's United States copyright in a stuffed plush

toy dog called "Muttsy." Plaintiff has moved for a preliminary injunction.

Plaintiff designs and manufactures stuffed toys, advertising them extensively, and selling them in so-called upscale retailers throughout the United States. Plaintiff received the copyright for Muttsy on February 14, 1986.

Muttsy is referred to by both attorneys as a floppy plush dog toy, none of its parts being very rigid. It "flops" on the floor, much as puppies often do, and rests with its nose touching the ground, its limp front legs stretched out in front, and its limp rear legs splayed out almost flat in back. It has a distinctly sway back, the middle being considerably lower than both the rump and the front shoulders. Indeed, the top of the rump appears to be slightly above the level of the head. The face is generally oval. The ears, which have a straight bottom edge, are relatively large and hang down. The eyes, comprised of two colors, are largely obscured by the light brown fur. The nose has two indented nostrils.

Defendant's product (the Smile dog) is a somewhat different floppy plush dog. The chief immediately observable difference is in the face and head, which defendant says it copied from a previous stuffed dog of its own design and manufacture. The dog has a conical muzzle, and its head and face are relatively upright and erect. The top of the head is higher than the top of the rump. The chin but not the nose rests on the ground. The ears hang down and have a rounded edge. The nose is without nostrils.

. The configurations of the tails of the two dogs are different. That of Muttsy is more limp and rests on the ground. That of the Smile dog starts higher on the rump, has a slight upward turn, and does not rest on the ground. The eyes of the Smile dog are of one dark color and have plastic eyelids; Muttsy has none.

Though both dogs have a brown fur, that of the Smile dog is darker and appears to be of uneven length on the toy. Muttsy has softer and finer fur, apparently of uniform length throughout. Muttsy has a more winsome appearance and a softer feel.

Plaintiff now seeks preliminarily to enjoin defendant from selling the Smile dog. The court assumes that plaintiff's copyright is valid.

The Constitution in Article 1, Section 8, Clause 8, empowers Congress to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." The Constitution thus authorizes Congress to grant monopolies in the form of patents and copyrights to encourage authors and inventors to invest their efforts and to use their talents in science and the useful arts so as "to advance public welfare." *Mazer v. Stein*, 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954).

In the exercise of that power Congress has provided that copyright protection "subsists" in "original works of authorship fixed in any tangible medium of expression," including, among others, "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a) (1977). Congress limited this protection by providing that "[i]n no case does copyright protection for an original work of authorship extend to any idea, ... [or] concept ... regardless of the form in which it is described, explained, illustrated or embodied in such work." 17 U.S.C. § 102(b).

The duration of the copyright monopoly is lengthy, far longer than that accorded patents. In a work created by an individual after January 1, 1978 the copyright endures for the author's life plus fifty years. 17 U.S.C. § 302(a). In "a work made for hire," such as plaintiff's product, the copyright lasts for seventy-five years from the year of the first publication or one hundred years from the year of its creation, whichever expires first. 17 U.S.C. § 302(c). The copyright on plaintiff's work, published in February 1986, will not expire until the year 2061.

To receive a copyright the work must be "original" with the author. There need not be "invention in the sense of striking uniqueness, ingeniousness, or novelty,

since the Constitution differentiates 'authors' and their 'writings' from 'inventors' and their 'discoveries.' " *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir.), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). But there must be a " 'minimal element of creativity over and above the requirement of independent effort.' " *Id.* (quoting I M. Nimmer, The Law of Copyright § 10.2, at 36 (1975)). Mr. Justice Holmes put it this way, concurring in *White–Smith Music Publishing Co. v. Apollo Co.*, 209 U.S. 1, 19, 28 S.Ct. 319, 324, 52 L.Ed. 655 (1908):

> The ground of this extraordinary right [of copyright] is that the person to whom it is given has invented some new collocation of visible or audible points,—of lines, colors, sounds, or words. The restraint is directed against reproducing this collocation, although, but for the invention and the statute, anyone would be free to combine the contents of the dictionary, the elements of the spectrum, or the notes of the gamut in any way that he had the wit to devise.

Congress granted the monopoly over such a collocation in order to encourage authors to create. However, Congress also recognized that there were countervailing interests at stake. Any monopoly tends to burden competitors and therefore the public. Indeed, if a copyright monopoly were to stifle independent creation it would raise First Amendment concerns. *See Goldwag, Copyright Infringement and the First Amendment*, 29 Copyright Law Symposium 1 (1983), 79 Columbia Law Rev. 320 (1979). By providing in 17 U.S.C. § 102(b) what the courts had previously stated, *see* cases cited in *Warner Bros. v. American Broadcasting Cos.*, 654 F.2d 204, 208 (2d Cir.1981), namely, that an author may claim copyright protection only in the "expression" of an idea and not in the "idea" itself, Congress appears to have decided, among other things, that the courts should construe the copyright monopoly so as not to trench on the First Amendment interest in "free trade in ideas."

The statutory language is, of course, hardly precise. A copyright protects the holder only against unauthorized copying.

*Mazer v. Stein, supra*, at 218, 74 S.Ct. at 471. Yet it is impossible to "copy" an "idea," which is any conception existing in the mind as a result of mental understanding, awareness, or activity. *See, e.g.*, Random House Dictionary of the English Language, Unabridged, 1969 ed. at 706. One cannot "copy" a conception in someone's mind. One can only copy the "expression" of the conception. Moreover, every minute detail of a work is the product of author's "idea." Every "expression" therefore presupposes an "idea."

■ What must be meant by the provision denying protection to "ideas" is that the law will not grant an author a monopoly over the unparticularized expression of an idea at such a level of abstraction or generality as unduly to inhibit independent creation by others. Judge Learned Hand illustrates the point in considering whether one play infringes the copyright of another.

> If Twelfth Night were copyrighted, it is quite possible that a second comer might so closely imitate Sir Toby Belch or Malvolio as to infringe, but it would not be enough that for one of his characters he cast a riotous knight who kept wassail to the discomfort of the household, or a vain and foppish steward who became amorous of his mistress. These would be no more than Shakespeare's "ideas" in the play, as little capable of monopoly as Einstein's Doctrine of Relativity, or Darwin's theory of the Origin of Species. It follows that the less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly.

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931).

Neither the statute nor the judicial opinions lay down criteria as to when an "idea" is so abstract or general as to preclude protection of its unparticularized expression. The decided cases depend so much on individual circumstances that they are of limited use as precedents. In fact Judge

Learned Hand considered that decisions must "inevitably be *ad hoc." Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). The best a court can do is decide in an individual case whether the detriments inherent in the monopoly are outweighed by the encouragement to an author's creativity.

■ Of course to the degree that the similarity between a copyrighted work and an alleged infringing work inheres only in the general ideas expressed, the similarities are not infringing. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1507 (9th Cir. 1987); *Frybarger v. Int'l Business Machs. Corp.*, 812 F.2d 525, 529 (9th Cir.1987). It follows that similarity in expression is noninfringing to the extent the nature of the creation makes similarity necessary, *see McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 320 (9th Cir.1987), and that "indispensable expression" of a generalized idea may be protected only against virtually identical copying. *Rachel, supra*, at 1507; *Frybarger, supra*, at 530. As the Court of Appeals for the Ninth Circuit recognized in *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971), when an abstract idea and its expression are "inseparable," copying the expression will not be barred, since to protect the expression would confer a monopoly of the idea upon the copyright owner.

The "ideas" that courts have deemed so general as to make their unparticularized expression noninfringing include, for example, jeweled bee pins, *see Herbert Rosenthal Jewelry Corp. v. Kalpakian, supra*, synthetic animal heads, *Rachel v. Banana Republic, Inc., supra*, mouse trap video games, *Frybarger v. Int'l Business Machs. Corp.*, supra, and toy games and dolls, *Durham Indus. Inc. v. Tomy Corp.*, 630 F.2d 905, 914–18 (2d Cir.1980).

■ None of these decisions is precisely in point here. But the "idea" expressed in Muttsy is of like generality. The idea of a dog is certainly general. So too is the idea of a more or less realistic, non-rigid stuffed toy dog that "flops" down on its stomach. It is a common sight to see puppies act in this way. The question therefore is wheth-er defendant has copied features of Muttsy unnecessary to express the idea of such a "floppy" dog. This court concludes that defendant has not and that there has been no copying of an expression protected by the copyright.

There are similarities between the two stuffed dogs. But the features that might cause an ordinary observer to regard the aesthetic appeal as similar, if not quite the same, are the very features so generalized as not to be the subject of copyright protection.

This is not like a case of comparing patterns on two textiles. *Cf. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra.* There are a limited number of ways of creating a more or less realistic "floppy" dog toy. In this court's judgment plaintiff is seeking "a larger private preserve than Congress intended to be set aside in the public market without a patent." *See Herbert Rosenthal Jewelry Corp. v. Kalpakian, supra*, 446 F.2d at 742.

Plaintiff cites two district court opinions granting it injunctive relief as to copyrights on a stuffed lion, *Gund Inc. v. Swank Inc.*, 673 F.Supp. 1233 (S.D.N.Y. 1987), and a stuffed bear, *Gund Inc. v. Fortunoff Inc.*, 3 U.S.P.Q.2d 1556 (S.D.N.Y.1986) [available on WESTLAW, 1986 WL 14912]. Those opinions do not describe the degree to which the features of the toys at issue coincided. In any event to the extent the reasoning of those cases differs from that in this opinion this court respectfully declines to follow them.

The above consists of the court's findings of fact and conclusions of law. The motion for a preliminary injunction is denied. So ordered.