**CHI–BOY MUSIC, Realsongs and Virgin Music, Incorporated, et al., Plaintiffs–Appellees,**

v.

**CHARLIE CLUB, INCORPORATED and Charles Vavrus, Defendants–Appellants.**

Nos. 90–2779, 90–2794.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1991.

Decided April 23, 1991.

---

Dennis C. Waldon, Michael J. Allen, Angela Visalli, Keck, Mahin & Cate, Chicago, Ill., Richard H. Reimer, New York City, for plaintiffs-appellees.

Thomas Feehan, Clifford E. Berman, Rooks, Pitts & Poust, Chicago, Ill., Angelo J. Bufalino, C. Michael Kendall, Lockwood, Alex, Fitzgibbon & Cummings, Douglas P. Roller, Thomas Feehan, Rooks, Pitts & Poust, Chicago, Ill., for defendants-appellants.

Before WOOD, Jr., and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

The defendants challenge the district court's finding of willful violations of federal copyright law. They also contest the court's damages calculations and attorney's fee award. For the following reasons, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

The plaintiffs are copyright owners and members of the American Society of Com-

posers, Authors and Publishers (ASCAP).[1] They brought two separate actions for copyright infringement against Charlie Club, Inc. and its owner and operator, Charles Vavrus (collectively Charlie Club). The suits were based upon unauthorized performances of copyrighted songs at three of the six Charlie Club facilities. These facilities are multi-use complexes, which contain various exercise and sporting facilities and, at some locations, hotel accommodations. From the time of their opening until approximately the summer of 1988, each Charlie Club location also included restaurant, bar, and nightclub operations.

Charlie Club first entered into a licensing agreement with ASCAP in 1979; the agreement covered music played in connection with the bar, restaurant, and nightclub operations. These licenses periodically were renewed and adjusted to reflect changes in the operations of the various Charlie Club locations, as well as in the licensing policies of ASCAP. In 1983, however, ASCAP brought a copyright infringement action against Charlie Club for activities allegedly occurring at unlicensed locations. This action was settled when Charlie Club agreed to obtain appropriate licensing contracts to cover the activities at each of its locations. From 1984 to 1987, Charlie Club paid appropriate fees to ASCAP in accordance with these agreements.

Charlie Club operations underwent a significant transformation during 1986 and 1987. At this time, Charlie Club began to cut back on the scope of its restaurant/nightclub activities, and eventually eliminated them in the summer of 1988. Concurrently, the parties became embroiled in a dispute over the amount of licensing fees due. As a result, Charlie Club paid no

fees to ASCAP after 1987, and in August 1987, ASCAP terminated all Charlie Club licenses.

This case involves two separate forms of copyright infringement, the occurrence of which Charlie Club does not dispute. First, Charlie Club played radio music over loudspeakers at three of its locations. Second, taped music was played during organized group aerobic workouts at some of these same facilities. These alleged infringements occurred after the termination of Charlie Club's licenses in 1987. Charlie Club maintains that, after the cessation of the restaurant/nightclub operations, it was unaware of the need to secure a new license to cover any other activities. Moreover, it also asserts that a letter mailed by ASCAP on March 22, 1988, detailing Charlie Club's obligations, was never received. Apparently, this letter mistakenly was sent to one of the Charlie Club facilities instead of to the corporate headquarters.

## B. District Court Proceedings

The plaintiffs instituted two separate actions, which were consolidated for trial, involving a total of thirteen alleged instances of copyright infringement.[2] After a three day bench trial, the district court found that the uses challenged by ASCAP constituted clear and willful copyright infringements. Central to the court's decision was its estimation of the testimony of Mr. Vavrus. It considered that testimony less than credible. The court reasoned that Mr. Vavrus reasonably could have concluded that "the prior licenses covered the collateral uses up until the time of termination [of the restaurant/nightclub licenses], but it is very difficult for me to accept the notion that he didn't realize that he didn't

1. ASCAP is a clearinghouse for copyright owners and users. ASCAP was organized to reduce the transactional and enforcement costs that would otherwise be incurred in reaching agreements with each individual copyright holder. *See Broadcast Music, Inc. v. Columbia Broadcasting Sys.,* 441 U.S. 1, 4–5, 99 S.Ct. 1551, 1554–55, 60 L.Ed.2d 1 (1979).

2. The first action concerned the unauthorized playing of six songs on September 25, 1988, and October 25, 1988. These songs were: "Red Red

Wine," "Hold On To The Nights," "I'll Be There," "California Dreamin'," "Monday, Monday," and "Mercedes Boy." The second action concerned the unauthorized playing of seven songs on November 11, 1989, January 12, 1990, and January 15, 1990. These songs were: "Angelia," "Blame It On The Rain," "The Way That You Love Me," "Once Bitten Twice Shy," "Never Gonna Let You Go," "Express Yourself," and "Into The Groove." ASCAP subsequently withdrew the count concerning the song "Never Gonna Let You Go."

have to pay anything to anybody for the subsequent uses...." Tr. at 387. In reaching its decision, the court also considered the course of dealing between the parties, the March 22 letter, Charlie Club's familiarity with the identical policy of AS-CAP's competitor, and the testimony of a former Charlie Club employee. In response to Charlie Club's equitable estoppel argument, the court concluded that the plaintiffs had done nothing to mislead Charlie Club.

The court enjoined Charlie Club from further unauthorized use of the plaintiffs' copyrighted music. Furthermore, the plaintiffs received statutory damages in the amount of $40,000, approximately three times the amount of the expectable license fees that Charlie Club would have owed had it secured licenses. Finally, the court granted costs and attorney's fees totaling $48,633.37. Charlie Club filed a timely notice of appeal challenging various elements of the district court's decision.

## II

## ANALYSIS

### A. *Willful Infringement*

Charlie Club does not dispute the occurrence of the alleged infringements. It does assert, however, that the district court erroneously characterized these infringements as willful. Charlie Club maintains that its conduct was not willful because it was unaware that a license was necessary to cover the challenged activities. Therefore, Charlie Club argues, the copyright violations were merely innocent infringements.[3] Additionally, Charlie Club challenges as improper the district court's reliance on past disputes between the parties to support its finding of willfulness. The plaintiffs, on the other hand, maintain that Charlie Club clearly had sufficient notice of the illegality of its actions. They also insist that the record contains abundant evidence that supports the district court's con-

clusion that Charlie Club's infringements were willful.

■ The district court's finding of willfulness is a factual determination that we shall not disturb unless the finding is clearly erroneous. *See International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir.1988). In applying this standard of review, "we must remember that a trial judge, in making such factual determinations, has every right to choose between two permissible views of the evidence." *Id.*

■ Charlie Club raises several aspects of the district court's decision, which it contends constitute clear error. First, Charlie Club attacks the court's conclusion that ASCAP provided notice concerning the alleged infringements. While not necessarily an essential element, "evidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness...." *Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991). Here, the court relied on the March 22, 1988 letter as proof of Charlie Club's notice concerning the need for licensing. Although the letter was sent to a Charlie Club facility, we see no reason to disturb the court's conclusion that the letter reached corporate headquarters. The letter clearly provided Charlie Club with notice. The letter specifically informed Charlie Club that it could not broadcast radio music over the loudspeakers in its clubs without first obtaining an appropriate license. Moreover, schedules attached to the letter explicitly indicated that Charlie Club was required to secure a dance school license if it intended to play music at its aerobic exercise classes. On the basis of such information, the court concluded that Charlie Club chose to ignore the letter.

In addition to the convincing evidence contained in the letter, other evidence supports the court's conclusion that Charlie Club knew of the need to obtain a license to

---

**3.** Under the Copyright Act, the trial court, in its discretion, may award an amount below the statutory amount if the infringer proves that its

infringements were innocent. *See* 17 U.S.C. § 504(c)(2).

cover the challenged uses. For example, the court noted that Broadcast Music Inc. (BMI), ASCAP's chief competitor, charged Charlie Club separately for the very same uses at issue in this case. In fact, Mr. Vavrus admitted at .trial that he had entered into a licensing agreement with BMI to ensure that music legally could be played during aerobic exercise classes. Such evidence certainly supports the court's conclusion that Charlie Club was well aware of the types of activities that required licensing. Moreover, the court credited the testimony of Pamela Fisher, a former Charlie Club employee, that Mr. Vavrus had been informed of the licensing requirement. "In relying on this pattern of conduct as evidence of the defendant's willfulness, the district court was following the approach of other district courts that have considered such evidence as relevant on the issue of willfulness." *Kowalczyk*, 855 F.2d at 381.

The court did not rely solely on ASCAP's notice and Charlie Club's awareness of that notice. The court based its decision in large part on the testimony of Mr. Vavrus himself. As we noted in *Kowalczyk*, "when the trial judge's findings are based primarily on oral testimony, the appellant's burden is especially great because the trial judge had the opportunity to evaluate the demeanor and credibility of the witnesses." *Id.* at 380. Here, the court did not credit Mr. Vavrus' testimony. It simply did not believe that an experienced businessman like Mr. Vavrus would not suspect that he might have to pay for a new license to cover the challenged uses after the cancellation of his original restaurant/nightclub license. Instead, the court concluded that, at best, Mr. Vavrus had ignored deliberately the obvious facts before him. Perhaps anticipating a recent decision of this court, the district court drew an appropriate analogy to the ostrich instruction given in criminal cases. *See Video Views*, 925 F.2d at 1021 ("one who undertakes a course of infringing conduct may neither sneer in the face of the copyright owner nor hide its head in the sand like an ostrich").

■ Finally, the trial court based its willfulness determination upon the course of dealing between the parties. Charlie Club argues that this constitutes punishment for past legitimate disputes with ASCAP. It suggests that accepting such a basis would require, in effect, all licensees to accept meekly and unquestioningly the dictates of ASCAP. The court's ruling, however, does not support such a sweeping concern. Contrary to Charlie Club's assertions, the court considered the evidence of past disputes as only one small part of the overall picture presented by the entire case. Evidence of past reluctance by an infringer to pay copyright fees certainly is relevant in assessing his present infringements. Here, the court pointed to the past conduct between the parties simply to illustrate Mr. Vavrus' attitude of "resistance to paying unless there was an aggressive attempt to go after him." Tr. at 387. The record as a whole provides ample evidence to support this characterization. In sum, nothing in Charlie Club's arguments convinces us that the district court's finding of willful infringement was clearly erroneous. Indeed, the record fully supports such a finding.

### B. *Estoppel*

■ Charlie Club maintains that even if its violations could be construed as willful, ASCAP should now be estopped from recovery. It asserts that ASCAP's silence on the challenged uses, despite its alleged awareness of those uses, led Charlie Club reasonably to conclude that no licenses were required. The plaintiffs counter that they in no way misled Charlie Club.

■ For estoppel to apply in a copyright action, the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment. *See United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). In this case, the district court found that ASCAP had done nothing to mislead Charlie Club. The record fully supports this conclusion. For a substantial period of time, the challenged uses would have been included under Charlie Club's existing li-

censes. Thus, during this time there would have been little reason to discuss properly licensed radio playing or aerobic exercise classes. Eventually, ASCAP changed its policy to require separate licenses for these uses.[4] Although ASCAP may not have sued Charlie Club immediately after the policy change, it certainly undertook no action that Charlie Club reasonably could have misconstrued. Indeed, far from misleading Charlie Club, ASCAP endeavored to provide notification of the necessary license requirements. It remains undisputed that ASCAP sent a letter detailing Charlie Club's obligations long before the occurrence of any of the infringements that form the basis of the present action. Thus, without any basis for reasonable reliance, estoppel is inapplicable here.

## C. *Damages*

■ Charlie Club next contends that the district court abused its discretion in awarding an excessive amount of damages. Specifically, it challenges the court's reliance upon the allegedly past due license fees in calculating the damages amount and insists that these fees were based upon vague, confusing, and unreliable evidence. To support its contention, Charlie Club proffers ASCAP's constant revision of the amount supposedly owed and argues that those figures included a double charge for the use of music during aerobics. The plaintiffs counter that the court acted well within the bounds of statutory discretion in calculating damages.

A copyright owner may choose to recover one of two different forms of relief against an infringer. First, he may recover actual damages and lost profits that are attributable to the infringement. *See* 17 U.S.C. § 504(b). However, because these damages are often virtually impossible to prove, a copyright owner may elect instead to recover statutory damages. *See id.* § 504(c). Under section 504(c), the court, in its discretion, may award from $500 to $20,000 per infringement. Moreover, if the court concludes that willful infringement occurred, it may increase the amount awarded up to a sum of $100,000 per infringement. *See id.* § 504(c)(1)–(2).[5]

■ The damages awarded here fall comfortably within the statutory scheme established by Congress. In awarding damages, the district court attempted to construct a figure equal to approximately three times the amount due under past license agreements. We specifically upheld this approach in *Kowalczyk. See* 855 F.2d at 382–83. The fact that the figure was not exactly three times the license amount is not troubling. The court was not required to follow any rigid formula. Indeed, district courts enjoy wide discretion in awarding fees and may consider various factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *See F.E.L. Publications v. Catholic Bishop of Chicago,* 754 F.2d 216, 219 (7th Cir.) (citations omitted), *cert. denied,* 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985); *see also Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984) (court has wide discretion to award any amount within the statutory guidelines). Moreover, when the

---

4. The record reflects some confusion as to when this policy change occurred. ASCAP's district manager testified that separate licenses would not have been required at the time the parties entered into their 1984 agreement. He also indicated that by 1988 a separate license would have been required for the playing of radio music over speakers. ASCAP's division manager, by contrast, testified that ASCAP changed its licensing policy sometime in the early 1980s. Assuming *arguendo* that the change occurred in the early 1980s, we find no merit in Charlie Club's estoppel argument because, as we note in the text, ASCAP did nothing to mislead Charlie Club.

5. On March 1, 1989, the Berne Convention Implementation Act of 1988 increased the amount of statutory damages available for all infringements from $250 to $10,000 per infringement to $500 to $20,000 per infringement and for willful infringement from $50,000 to $100,000 per infringement. Pub.L. No. 100–568, § 10(b), 102 Stat. 2853, 2860 (1988). In this case, the new maximum award of $100,000 applies only to the six infringements occurring after the legislation took effect. The former maximum award of $50,000 applies to the six infringements occurring before that date.

infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations. *See Illinois Bell Tel. Co. v. Haines & Co.*, 905 F.2d 1081, 1089 (7th Cir.1990); *Kowalczyk*, 855 F.2d at 383. Under the statute, the court potentially could have awarded up to $900,000, or in other words, 22.5 times the amount that it actually awarded. Instead, the district court attempted to fashion a remedy more equitably tailored to the specific facts of the case. In essence, Charlie Club contends that the court did not base recovery on a figure that accurately measured the plaintiffs' losses. It is precisely because of the difficulty in measuring such losses, however, that statutory damages exist. Accordingly, we conclude that the district court's damages award did not constitute an abuse of discretion.

### D. *Attorney's Fees*

Finally, Charlie Club challenges the court's award of attorney's fees. It asserts that such an award would be improper in light of the innocent nature of the infringements and disproportionate in light of its meritorious defense. The plaintiffs respond that the district court could properly award attorney's fees after it found willful infringements.

The Copyright Act provides that the award of attorney's fees is within the sound discretion of the court.[6] We begin by noting that a finding of willful infringement will support an award of attorney's fees. *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990); *Kowalczyk*, 855 F.2d at 384; *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir.1983). As we have indicated, the record fully supports the court's finding of willfulness. Under these circumstances, the court properly awarded attorney's fees.

Additionally, Charlie Club maintains that an award of fees would be punitive because the plaintiffs already have been made more than whole by the court's award of damages. We find no merit in this argument. Attorney's fees may be awarded for reasons other than simply making the plaintiff whole, such as encouraging the assertion of colorable copyright claims and deterring infringement. *See Roulo*, 886 F.2d at 942; *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir.1987). Moreover, this case presents a particularly appropriate occasion on which to award attorney's fees. The district court found that Charlie Club treated the copyright laws with disdain. Indeed, it noted that Mr. Vavrus' attitude was "[i]f they went after him, he could deal with it then. But in the meantime, having to pay a bunch of money for doing nothing else than listening to a radio and playing some tapes in some classes was not something that he felt he should go out of his way to check out with either a lawyer or with ASCAP." Tr. at 388. Because of this attitude, the plaintiffs went out of their way and exerted considerable time and effort in pursuing this matter.

Our examination of the record convinces us that the district court thoroughly and thoughtfully reviewed the matter of attorney's fees. The record affirmatively evidences the sound exercise of discretion—not an abuse of discretion. We therefore conclude that the district court's award of attorney's fees was appropriate.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**6.** Section 505 provides in pertinent part that "the court in its discretion may allow the recovery of full costs by or against any party ... [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.