**WILDLIFE EXPRESS CORPORATION,**
Plaintiff–Appellee,

v.

**CAROL WRIGHT SALES, INCORPORATED, Defendant–Appellant.**

No. 92–3274.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1993.
Decided March 11, 1994.

P. Gregory Cross (argued), Mark R. McKinney, Cross, Marshall, Schuck, Deweese, Cross & Feick, Muncie, IN, for plaintiff-appellee.

James D. Zalewa (argued), Mark J. Liss, Leydig, Voit & Mayer, Chicago, IL, for defendant-appellant.

Before RIPPLE, KANNE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Wildlife Express Corporation ("Wildlife") brought an action against Carol Wright Sales, Inc. ("Carol Wright") to recover damages for infringement of various copyrighted animal-styled children's duffle bags. The magistrate judge, sitting with the consent of the parties as the district court, found that Carol Wright had infringed, willfully or with reckless disregard, Wildlife's copyrights of the sculptured bear, duck and elephant duffle bags and awarded statutory damages in the amount of $50,000 per copyright infringement. Carol Wright appeals. For the reasons discussed in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

A. *Facts*

Wildlife is an Indiana corporation that manufactures and sells children's duffle bags with soft sculpture animal heads and tails on the ends of cylindrical bags called "roll bags." The plush heads and tails were made to resemble bears, pandas, ducks and elephants. Wildlife named its bags "Critters in a Carrier" and obtained registered copyrights of the soft sculptures on the bags. Defendant Carol Wright, a Delaware corporation, is a mail-order retailer that purchases products from domestic and foreign suppliers and offers them for sale through catalog mailings. It marketed four duffle bags with plush heads and tails, in the forms of a bear, panda, duck and elephant, under the name "Precious Pet Duffle Bags."

Wildlife exhibited its Critters in a Carrier at the 1986 American International Toy Fair in New York City. An exhibitor from Taiwan, Jackson Lin, carefully examined the bags for approximately fifteen minutes, to the concern of Wildlife. In fact, after Mr. Lin offered to manufacture the Critters, Wildlife's president Stephen Janney escorted Mr. Lin away from his booth. Months later, in the fall of that year, Carol Wright's chief executive officer, Robert Ginsberg, visited Mr. Lin's showroom in Taiwan. Following that visit, Carol Wright's senior buyer made arrangements to market Precious Pet Duffles, which were made by Dior Merchandising, one of Mr. Lin's companies. Carol Wright offered the Precious Pet Duffles for sale in 1987. Wildlife became aware of the

duffles in May 1987, when the company received the Carol Wright catalog.

In October 1988, Carol Wright received a Notice of Redelivery from the United States Customs Service. It stated that Carol Wright's panda duffle bags infringed a copyright registered and owned by Wildlife. The next month the Customs Service cancelled the notice because Wildlife did not post the bond required to contest Carol Wright's shipment as violative of its copyright. The Customs Service wrote across the original notice "cancelled 11/3/88 panda dissimilar from copyright registration of Wildlife Express. [signed] D.E. Daniels." In February 1989, however, Wildlife asserted a claim of copyright infringement against Carol Wright. Carol Wright denied the claim but offered to discontinue selling the bags when it had depleted its present inventory. In September 1989, Wildlife filed suit.

B. *Procedural History*

Noting the methodology set out by this court in *Atari, Inc. v. North American Philips Consumer Elecs. Corp.*, 672 F.2d 607 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982), the district court acknowledged that, in order to establish copyright infringement, the plaintiff must prove that he owns a valid copyright and that the defendant copied his work. With respect to the first factor, the court concluded that Wildlife owns valid copyright registrations for the bear, duck and elephant, and that they are the proper subjects of a copyright as sculptural works because the head and tail of the duffle bag are separately identifiable from the utilitarian duffle.

Considering the second factor, the district court determined that Carol Wright had access and therefore the opportunity to copy the copyrighted work. With respect to the issue of substantial similarity, the fact of copying was established, in the court's view, by a comparison and dissection of the prod-

ucts. The court relied substantially on the virtual identity of the disassembled pattern pieces that make up each of the animal faces and tails in the Critters and Precious Pets. In determining that the copying resulted in an improper appropriation, the court held that an "ordinary observer" comparing these two expressions of the duffle bags would regard their "aesthetic appeal" as identical and would conclude that Carol Wright unlawfully appropriated Wildlife's work and infringed on its copyrights.

Turning to damages, the district court found the plaintiff's actual damages too speculative to award, but then awarded enhanced statutory damages by finding that Carol Wright's infringement was willful. The court determined that Carol Wright, by choosing not to inquire into the proprietary status of merchandise purchased abroad, accepted the risk of infringement. Once Carol Wright had received the Customs notice, "it was no longer reasonable to sit back secure in its belief that its panda did not infringe Plaintiff's panda." R.501 at 11. The court found Carol Wright's failure to conduct a check on copyrights to be reckless disregard, and its continued sales after Wildlife's letter and subsequent suit claiming infringement to be willful infringement. It set damages at $50,000 for each of the three copyright infringements.

II

DISCUSSION

■ Carol Wright challenges the district court's determinations that there was substantial similarity between its Precious Pet Duffle bags and Wildlife's Critters bags, and that Carol Wright infringed Wildlife's copyrights willfully or with reckless disregard of their existence. We shall examine each argument by reviewing the district court's findings of fact for clear error and its conclusions of law de novo.[1] Fed.R.Civ.P. 52(a); *Chi-*

---

1. The Second Circuit has taken the position that a review for substantial similarity is de novo when the appellate court, like the district court, can make a visual comparison of the works in question. *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 766 (2d Cir.1991); *Business*

*Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 402 (2d Cir.1989). In this circuit, when reviewing the products in issue for substantial similarity, we permit "side-by-side" comparison, *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 937 (7th Cir.1989), *cert. denied*, 493

*Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir.1991) (applying "clearly erroneous" standard to findings of willfulness); *Atari*, 672 F.2d at 620 (holding that district court's conclusion on substantial similarity not clearly erroneous); *see also Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir.1988) (reviewing factual findings on substantial similarity for clear error); *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1248 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987) (same).

## A. Copyright Infringement

■ A plaintiff claiming copyright infringement must show both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *see also* 3 Melville B. Nimmer, *Nimmer on Copyright* § 13.-01[A], at 13–6 (1993).

### 1.

■ We turn first to the validity of the copyright. To receive a copyright, the work must be original. *Feist*, 499 U.S. at 361, 111

S.Ct. at 1296. A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright. 17 U.S.C. § 410(c). Although that presumption may be rebutted, in this case Wildlife's ownership of the pertinent copyrights and the validity of those copyrights are not challenged.[2]

■ In this case, protection is claimed for the animal heads and tails themselves, and for the way they are placed on the duffle bags, but not for the general idea of animal heads on duffle bags.[3] This claim is consistent with the Copyright Act. The primary objective of the Copyright Act, the promotion of the arts and sciences, "is accomplished by 'assur[ing] authors the right to their original expression,' but also by 'encourag[ing] others to build freely upon the ideas and information conveyed by a work.'" *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1069 (7th Cir.1994) (quoting *Feist*, 499 U.S. at 349–50, 111 S.Ct. at 1290). In light of this goal the Copyright Act protects the expression of ideas, but exempts the ideas themselves from protection. 17 U.S.C. § 102(b) (identity of ideas shown in two works does not give rise to infringement action); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S.

U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990), and an "ocular comparison," *Atari*, 672 F.2d at 619, of the works being analyzed for similarity, but follow the clearly erroneous standard in reviewing the district court's conclusions. Reviews of findings of fact are limited by *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), to the clear error standard. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 n. 46 (11th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987) (rejecting de novo review, adhering to "clear error" for review of finding of similarity in trade dress infringement).

2. The district court, in paragraph 9 of the Findings of Fact, erroneously referred to the copyright registration of Wildlife's elephant trunk by the number of an earlier copyrighted version of the elephant. Following a limited remand for clarification of this issue, on December 28, 1993, the district court acknowledged that a scrivener's error had been made in the entry and corrected the copyright registration number. *See Transamerica Ins. Co. v. South*, 975 F.2d 321, 325 (7th Cir.1992) (deciding that district courts may issue *nunc pro tunc* orders to correct clerical or ministerial errors); *Local 1545, United Mine Workers v.*

*Inland Steel Coal Co.*, 876 F.2d 1288, 1292 n. 4 (7th Cir.1989) (same).

3. The parties in this case distinguish between the duffle bag itself, which is a "useful article," and the animal head and tail attached to the ends of the bag, which are artistic designs entitled to copyright protection. *See* 17 U.S.C. § 102(a)(5). Under the Act, an artistic work such as a drawing which is "multiplied by the arts of printing in any of its branches" is copyrightable by its "originator" or "maker." *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 56–58, 4 S.Ct. 279, 280–281, 28 L.Ed. 349 (1884). However, the Act requires that a distinction be drawn between artistic expressions such as fabric designs, which are worthy of copyright expression, *see, e.g., Millworth Converting Corp. v. Slifka*, 276 F.2d 443, 444–45 (2d Cir.1960) (Friendly, J.); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) (Hand, J.), and "useful articles" such as dress designs, which are not usually the subject of copyrights. *See Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989); *see also Folio Impressions*, 937 F.2d at 763 (stating this distinction). *See generally* 1 *Nimmer on Copyright* § 2.08[H][1][2], at 2–144 to 2–147.

539, 547, 105 S.Ct. 2218, 2223–2224, 85 L.Ed.2d 588 (1985).[4] Consequently, we have held that, in a video game, for example, the original manner of expressing ideas is found in the "shapes, sizes, colors, sequences, arrangements and sounds." *Atari*, 672 F.2d at 617. In a life-size, realistic-looking concrete deer it is the features over which the manufacturer exercised discretion in its portrayal, aspects such as pose, posture, and facial expression. *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 607 (1st Cir.1988). When reproduction of a life-like object is at issue, "a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not *required* by the idea." *Id.* One court has found that the design of a jewelled bee pin provided nothing new to the idea of the pin; therefore, since copying the pin necessarily would entail copying the idea as well as the expression, copying the expression was not barred. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971). However, "[a]s a work embodies more in the way of particularized expression, it moves away from the bee pin in *Kalpakian,* and receives broader copyright protection." *Atari*, 672 F.2d at 617. At the other end of the spectrum, creative complex artistic expressions are more fully protected. *Id.; see Concrete Mach. Co.*, 843 F.2d at 607 (describing "sliding scale of copyright protec-

tion"); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1169 (9th Cir.1977) (finding that the expression of the television series differs markedly from the idea).

### 2.

An owner of a copyright is protected against unauthorized copying. *Mazer v. Stein*, 347 U.S. 201, 218, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). Writing for this court in *Atari*, Judge Wood stated that copyright infringement may be inferred when it is shown that "the defendant had access to the copyrighted work, and the accused work is substantially similar to the copyrighted work." *Atari*, 672 F.2d at 614.[5] He suggested the test of substantial similarity involved two inquiries: copying of the plaintiff's work and improper appropriation of the work. *Id.; see also Folio*, 937 F.2d at 765 (citing cases). It has been long settled that a plaintiff cannot succeed in his proof if (1) the similarities between the works are not sufficient to prove copying, or (2) it is established that one work was arrived at independently without copying. *See Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 103 (2d Cir.1951) (upholding copyrights in mezzotint reproductions of old classic paintings).

In this circuit, as in most,[6] the determination whether there is substantial similar-

---

4. 17 U.S.C. § 102, in pertinent part, provides:
   **§ 102. Subject matter of copyright: In general**
   (a) Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include

   . . . .

   (5) pictorial, graphic, and sculptural works....
   (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, ... or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

5. Access can be found to exist when the defendant had an opportunity to view the protected item. 3 *Nimmer on Copyright*, § 13.02[A] at 13–16 (1990); *Robert R. Jones Assocs. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir.1988). Carol Wright does not contest the district court's find-

ings concerning its supplier's opportunity to view Wildlife's items and to have access for purposes of copying. (Findings of Fact nos. 11–20.) Nor does it challenge the court's determination (Mem. at 4) that Wildlife met its burden of proving access. Although Carol Wright argued in its reply brief that there was no evidence that Carol Wright had access to Wildlife's works at the International Toy Fair or that Lin's visit to Wildlife's booth was sufficient for copying, this contention was not raised in the district court or in the opening brief. Arguments raised for the first time in the reply brief are waived. Circuit Rule 28(f); *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992).

6. *See, e.g., Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992); *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 733 (4th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990); *United Tel. Co. v. Johnson Publishing Co.*, 855 F.2d 604, 608 (8th Cir.1988); *Concrete Mach.*, 843 F.2d at 607; *Educational Testing Servs. v. Katzman*, 793 F.2d 533, 541 (3d Cir.

ity is made by the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Atari*, 672 F.2d at 614 (citing *Krofft*, 562 F.2d at 1164). This approach is the same as that employed more than thirty years ago by Judge Learned Hand for the Second Circuit. There, the court held that two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).

### 3.

Against this background, we now turn to an analysis of the case before us.

### a.

■ We begin with the district court's findings. The district court entered findings of fact in this case with respect to specific elements of copying found by the court:

23. The defendant's Precious Pet Duffle Teddy Bear copies the plaintiff's Hershel the Bear in the size and location of its ears, type and placement of the eyes relative to each other and the snout, and the kind of loop tail and its location and alignment on the back of the bag.

24. The defendant's Precious Pet Duffle Panda Bear copies the plaintiff's Hershel the Bear in the same respects as the teddy bear copies the Hershel the Bear.

25. The defendant's Precious Pet Duffle duck copies the plaintiff's Just Ducky in the location of the eyes relative to each other and the bill, the shape, color, configuration and location of the bill, and the shape of tail and its location.

26. The defendant's Precious Pet Duffle elephant copies the plaintiff's Elephant Trunk, in the size and location of its ears, the placement of the eyes relative to each

other and the trunk, the shape and placement of the trunk, and the presence of a braided string tail at the top of the back of the bag.

27. Upon disassembling the Plaintiff's bags, and placing the disassembled pieces beside and atop the Defendant's pieces, except for a few minor differences that resulted in the Defendant making its bags more cost effectively, the parts that make up the front and back of each bag are virtually identical.

28. The disassembled pieces of plaintiff's and defendant's bags are virtually identical in size, shape and in the location of eye, ear and nose (bill and trunk) holes.

R.502 at 5–6. The court then employed the "ordinary observer" test in finding that copying had occurred.

29. An ordinary observer viewing the plaintiff's and defendant's bears, ducks and elephants would conclude that one was derived or copied from the other.

30. The defendant's supplier through its President, Jackson Lin, had access to plaintiff's copyrighted products and the defendant's products are substantially similar to plaintiff's copyrighted bear, duck, and elephant.

R.502 at 6. Likewise, in its Memorandum, the court stated that it had compared the works in their entirety, including a study of the disassembled pieces of the works, and had concluded that "[t]he identical nature of almost every part of these bags leads this Court to find that the Defendant did copy the Plaintiff's work." R.501 at 5. It described in detail the similarities of the animal tails:

The fact of a copying is most readily apparent on examination of the back sides of these bags. Each has a stylized tail that is virtually identical between Plaintiff and Defendant. Plaintiff's choice of a material and design of each tail is in general suggested by nature but in fact is a unique representation. Thus, the Plaintiff's bears, brown and panda, have a loop of plush aligned up and down about 1″ wide and 1½″

1986); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Original Ap-*

*palachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir.1946).

to 2″ long in the middle of the circle. So, curiously enough, does Defendant's. Plaintiff's duck has a gather of plush from the middle of the circle up to top and extending beyond the top about an inch. So, curiously enough, does Defendant's. Finally, Plaintiff's elephant has a tail of braided string attached at the top of the circle and hanging limply about half way down the back circle. Needless to say, curiosity fulfilled, so does Defendant's. Finally, Defendant's supplier also chose to manufacture four items, which just happened to be Plaintiff's four most popular styles in 1976 [sic] and those displayed most prominently at the Toy Fair, the panda bear, the brown bear, the duck, and the elephant. The evidence of copying is more than ample.

R.501 at 5–6.

The district court also employed the "ordinary observer" test in its Memorandum analysis:

In this case, the Plaintiff's particular expression of the idea of making children's duffle bags with soft sculpture animal heads and tails on the ends[ ] would be properly protectible under the Copyright Act. Of course, the idea of animal styled duffle bags would not be protectible under copyright law. However, when an ordinary observer would compare these two expressions of the duffle bags, he would certainly overlook any differences in them, such as the zippers around the ends on the Defendant's bags, and regard their "aesthetic appeal" as the same. The Defendant's bags are substantially similar to the Plaintiff's work, and since the Defendant had access to the Plaintiff's work, the Court finds that the Defendant has infringed on the Plaintiff's copyrights.

R.501 at 6–7.

#### b.

We now turn to the submission of Carol Wright. In its view, Wildlife has created generic faces of animals with characteristics inherent in the *idea* of the animals, such as the floppy ears of elephants and the black eye patches of pandas. Carol Wright asserts that the copyright protection over generic animal heads and tails, with very little originality of expression, is very narrow. Carol Wright relies on three decisions. In *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 741 (9th Cir.1971), the Ninth Circuit found no copying "because both pins were life-like representations of a natural creature." As we have noted earlier, *Kalpakian* involved a jeweled bee pin. The court concluded that the only similarity between the two products at issue was that which was "inevitable from the use of jewel-encrusted bee forms in both." *Id.* at 742. In the court's view, the unprotectable idea and the protectable expression were identical. *Id.*

The two New York district courts decisions upon which Carol Wright relies held that, because the claimed similarities of the objects under review were features common to all such objects, the features were not subject to copyright protection. *Gund, Inc. v. Smile Int'l, Inc.,* 691 F.Supp. 642, 645 (E.D.N.Y.1988), *aff'd,* 872 F.2d 1021 (2d Cir. 1989) (stuffed dogs); *Russ Berrie & Co. v. Jerry Elsner Co.,* 482 F.Supp. 980, 987 (S.D.N.Y.1980) (stuffed Santas, Christmas bears, gorillas). Likewise in this case, submits Carol Wright, the only similarities between Wildlife's and Carol Wright's designs are due to the generic nature of the items that are not protected by copyright law.

#### c.

Having examined the findings of the district court and the submission of Carol Wright on appeal, we now turn to an evaluation of that submission. In addition to the material just described, we have had the opportunity to make side-by-side comparisons of the bears, ducks and elephants. *See Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 935 (7th Cir.1989); *Atari,* 672 F.2d at 619. We can discern no basis for disagreement with the decision of the district court. Contrary to Carol Wright's assertions, the animal portions of the duffle bags are neither generic designs nor lifelike representations deserving of only narrow protection. There is certainly an imaginative artistic expression in the soft sculptured heads and tails. Upon consideration of the overall look and character of the duffle bags, or their "total concept

and feel," see 3 *Nimmer* § 13.03[A] at 13–39 to 13–44; *Atari,* 672 F.2d at 620, we see a remarkable resemblance between Wildlife's and Carol Wright's works. They are very similar in size, shape, pose, and feel. We note some dissimilarities in the color and type of plush fur, the animals' eyes and noses; the trunk and the ears of the elephants also differ slightly. However, such variations are, no doubt to some extent, factors of the products available to each company and perhaps of slight adaptations in the patterns. These differences are of minor importance in the overall artistic expression of the entire animal faces and tails under review, and, consequently, they do not preclude a finding of infringement under the ordinary observer test. *See Atari,* 672 F.2d at 618; *Concrete,* 843 F.2d at 609–10 (considering differences of size and of direction in which head of deer points to be minor or trivial variations, insufficient to avoid a finding of substantial similarity); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1094 n. 6 (2d Cir.1977) (holding that mere changes in the color scheme of a copied design does not usually protect a defendant from the charge of infringement); *Russ Berrie,* 482 F.Supp. at 988 (deciding that differences in plush and stuffing, skin tone, and facial dimensions are not enough to prove defendant had original design).

■ The Act does not require identical copying, only substantial similarity. The overall similarity of the bags, as well as the almost exact identity of the disassembled component pieces for each animal, far outweighs the relatively trivial dissimilarities. On this record, we cannot overturn the conclusions of the district court: The plaintiff's sculptured animal heads and tails were copied, and the copying is sufficiently substantial to constitute unlawful appropriation. Accordingly, the district court's determination of substantial similarity was not clearly erroneous.[7]

**B.** *Willfulness*

■ Carol Wright also submits that the district court erroneously found that its infringement of the plaintiff's copyrights was willful.

### 1.

The Copyright Act permits an increased statutory damage award of up to $50,000 for willful infringement under 17 U.S.C. § 504(c)(2). The Act does not define "willful"; its determination is left for the trier of fact. A party therefore has a heavy burden when seeking reversal of a trial court's determination of willful copyright infringement: "The district court's finding of willfulness is a factual determination that we cannot reverse unless clearly erroneous." *International Korwin Corp. v. Kowalezyk,* 855 F.2d 375, 380 (7th Cir.1988).

> In applying this standard, we must remember that a trial judge, in making such factual determinations, has every right to choose between two permissible views of the evidence. Moreover, when the trial judge's findings are based primarily on oral testimony, the appellant's burden is especially great because the trial judge had the opportunity to evaluate the demeanor and credibility of witnesses.

*Id.* (citations omitted).

■ In this circuit, our caselaw establishes that a finding of willfulness is justified "if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Video Views, Inc. v. Studio 21, Ltd.,*

---

7. The cases upon which Carol Wright relies present factual circumstances quite different from the one presented by this case. *Kalpakian,* 446 F.2d at 741, dealt with a life-like animal representation of a bee that allowed for no variation of expression. In *Gund,* 691 F.Supp. at 645, the court found the stuffed puppies to be quite realistic in their looks and floppiness, and therefore granted no protection to those features because they were general characteristics of all puppies. In *Russ Berrie,* 482 F.Supp. at 987, the court refused copyright protection because the similarities between the Santas and bears were features the ordinary observer would find common to all Santas and bears. When the similarities have been in features other than those features common to all objects of the species, the courts have protected the artistic expression exhibited in the product. *See, e.g., Recycled Paper Prods., Inc. v. Pat Fashions Indus., Inc.,* 731 F.Supp. 624, 626 (S.D.N.Y.1990) (teddy bears); *Act Young Imports, Inc. v. B and E Sales Co.,* 673 F.Supp. 672, 673 (S.D.N.Y.1987) (animal-shaped children's back packs).

925 F.2d 1010, 1020 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Therefore, in determining whether the violation was willful, the trier of fact may consider evidence that the defendant ignored the plaintiff's notices about copyright protection, did not seek advice of an attorney, and passed the matter off as a nuisance. *International Korwin Corp.,* 855 F.2d at 380–81. "[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." *Video Views,* 925 F.2d at 1021. A letter informing the defendant of possible infringement clearly provides notice. *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227 (7th Cir.1991). When questions concerning the *quality* of the notice of infringement arise, the trier of fact must determine the weight that ought to be accorded to the notice in deciding whether the violation was willful.[8] Because willfulness is a factual issue, the trier of fact's weighing of the defendant's testimony, demeanor, and credibility is, of course, deserving of our deference, and we shall overturn its finding only for clear error. *International Korwin Corp.,* 855 F.2d at 380.

### 2.

Keeping in mind the principles set forth above, we now turn to the case before us.

### a.

The district court made the following findings of fact concerning willful infringement:

31. Mr. Ginsberg [Carol Wright's Chief Executive Officer] testified that the Defendant does not inquire into any proprietary interests in the products that it includes in its catalogue, unless such an interest is obvious, for example, a product containing Mickey Mouse or Garfield.

32. In October 1988, the Defendant received notice of redelivery by the United States Custom Service, contending that its Panda duffle bags infringed on a copyright registered and owned by the Plaintiff.

33. In November 1988, the notice of redelivery was cancelled by the U.S. Customs Service and the shipment was concluded to be dissimilar to the copyrighted items, because the Plaintiff did not post the bond required to contest the Defendant's shipment as violative of its copyright.

34. After the Defendant was made aware of the problem with the U.S. Customs Service, Dior Merchandising was contacted, and Jackson Lin responded that he was "amazed" that there was a copyright problem. However, Mr. Lin offered no proof of the independent origin of his design.

35. As of October 1988, defendant was aware of the existence of Wildlife Express and its claim to a copyright covering the Precious Pet Duffle Panda and had been in contact with plaintiff's attorney.

36. Defendant's failure, after October 1988, to inquire after other Wildlife Express copyrights that might cover the Precious Pet Duffle duck, bear and elephant was reckless indifference.

R.502 at 6–7. In its memorandum of law, the district court made these findings concerning willfulness:

The Court may also award enhanced statutory damages up to $100,000 per infringement upon a finding of willful infringement. The Court has concluded that Defendant's initial sales were innocent. However, Defendant's innocence was that of one who elects not to inquire. Defendant's agent's testimony was that they routinely did not check the proprietary status of merchandise purchased abroad, for reasons of cost, unless a recognized symbol like Mickey Mouse or Garfield Cat was involved. Thus, Defendant accepted the risk of infringements of unexamined and undiscovered copyrights. When Customs detained panda shipments on the basis of Plaintiff's copyright, and Defendant learned of Plaintiff's existence, Plaintiff's counsel's existence and Plaintiff's business, it was no longer reasonable to sit back

---

**8.** *Cf. Video Views,* 925 F.2d at 1021 (agreeing with district court's determination that plaintiff's letter notifying defendant of infringement allegations did not list the two films found to be infringed, and noting that the record is bare of evidence of willful infringement of those films).

secure in its belief that its panda did not infringe Plaintiff's panda. Nor did Mr. Lin's words of amazement without proof of independent origin or offer of indemnity take Defendant out of a position of reckless disregard of Plaintiff's possible copyrights.

Defendant's failure to conduct a check of what copyrights Plaintiff had registered, at this point, October, 1988, was an act of reckless disregard under the totality of the circumstances. Defendant's continued sales after Plaintiff's demand letter of February, 1989 and after suit was filed in September, 1989 are clear instances of willful infringement.

Defendant did offer into evidence its attorney's letter of March 21, 1989 to Plaintiff disputing Plaintiff's claims. This is suggestive of a defense of good faith reliance on advice of counsel. However, advice of counsel is proved by the letter counsel sends his client, not the letter counsel sends his adversary. The former type of proof, either in writing or oral, was not offered by Defendant.

Accordingly the Court concludes that Defendant willfully infringed three of plaintiff's copyrights and Plaintiff is entitled to enhanced damages. In light of the fact that the bulk of Defendant['s] sales were arguably innocent, the Court, in the exercise of its discretion, fixes these damages at $50,000 per copyright.

R.501 at 11–12.

#### b.

Carol Wright first challenges the magistrate judge's finding of fact no. 33, *supra,* that the Notice of Redelivery was canceled because Wildlife had not posted the bond required to contest Carol Wright's shipment of pandas. Carol Wright maintains that the Notice clearly stated that the panda was found to be "dissimilar" to the copyrighted work.

Carol Wright then asserts that, once it was told there was no copyright infringement, it had reason to believe it was not infringing, and thus was not on notice to investigate further. Moreover, Carol Wright insists that it had taken action as soon as it received the original Notice of Redelivery. It had investigated the claim through its supplier, obtained advice of counsel, and made repeated requests of Wildlife to obtain more information, but did not receive a response. Carol Wright also claims that it acted diligently beyond this stage: It cooperated with Customs by providing the information requested and planned to deplete its inventory of the duffle bags and to discontinue sales. This is hardly willfulness or reckless disregard, argues Carol Wright.

#### c.

In assessing the position of Carol Wright, we begin by examining the reasons underlying the Customs Service's cancellation of its Notice of Redelivery. Carol Wright challenges the district court's finding that the notice was canceled because Wildlife did not post the required bond. However, the district court had before it both the notice, with the cancellation notation written across it, and the testimony of Wildlife president Stephen Janney, who testified that he had informed the Customs Office that Wildlife could not afford to post the $80,000 bond required to keep the shipment of Carol Wright pandas from coming into the country. (Tr. at 817–18.) Carol Wright neither objected to this explanation at trial nor challenged it in cross-examination. The district court was entitled to rely upon that testimony. There is no basis for our second-guessing that determination.

We next consider whether the subsequent cancellation of the Customs notice relieved Carol Wright of its duty to investigate further the possibility of copyright infringement. The district court faulted the defendant for failing to inquire about other Wildlife copyrights once the original notice appeared in October 1988. We believe that, on this record, the district court was entitled to come to that conclusion. Carol Wright had notice of a possible infringement from the Customs officials, and yet did not contact the copyright owner to investigate the charge further. *See Video Views,* 925 F.2d at 1021 (stating that receipt of notice is persuasive evidence of willfulness).

**514**

Finally, we note that other evidence supports the determination of the district court. The record reflects that Carol Wright told Wildlife in February 1989 that Carol Wright's sales were all but terminated; nevertheless, Carol Wright continued to sell the Precious Pets throughout 1989, including the period after the lawsuit was filed against Carol Wright in August 1989. We note that the district court considered the fact that, according to the testimony of its chief executive officer, the company did not conduct patent and copyright searches, but was willing to risk possible infringement and subsequent payment for infringement as a "cost of doing business." Tr. at 554. Such patterns of conduct support a showing of willfulness. *Chi–Boy*, 930 F.2d at 1228. In fact, that attitude by Carol Wright's CEO could be sanctionible: "Increased statutory damages may be necessary in a particular case to prove that it 'costs less to obey the copyright laws than to violate them.'" *Id.* (quoting *International Korwin Corp.*, 855 F.2d at 383). *See Video Views*, 925 F.2d at 1021 ("[O]ne who undertakes a course of infringing conduct may neither sneer in the face of the copyright owner nor hide its head in the sand like an ostrich.").

The record, when evaluated as a whole, provides ample evidence to support the district court's decision. Nothing in the defendant's arguments affords us a principled basis for reversal of the district court's finding of willful infringement.

### Conclusion

After a complete review of the record, we hold that the district court's challenged findings of substantial similarity and of willful infringement were not clearly erroneous. Consequently the judgment of the district court is affirmed.

AFFIRMED.