JOHNSON WORLDWIDE
ASSOCIATES, INC.,
Plaintiff,

v.

ZEBCO CORPORATION and
Brunswick Corporation,
Defendants.

No. 97–C–453–S.

United States District Court,
W.D. Wisconsin.

April 2, 1998.

## MEMORANDUM AND ORDER

SHABAZ, Chief Judge.

Plaintiff Johnson Worldwide Associates, Inc. commenced this patent and copyright infringement action alleging that the defendant Zebco Corporation ("defendant") is manufacturing and selling a bow mounted electric trolling unit which infringes plaintiff's U.S. patent no. 5,202,835 (the '835 patent) and that defendant unlawfully copied plaintiff's sales brochure for the trolling unit. Jurisdiction is based on

28 U.S.C. § 1338. The matter is presently before the court on cross motions for summary judgement on the patent claim and on plaintiff's motion for summary judgment on the copyright claim.

### FACTS

The following is a summary of the relevant undisputed facts. Plaintiff and defendant are competitors in the manufacture and sale of trolling units [1]. Plaintiff developed and obtained the '835 patent on a self steering trolling unit which generally maintains a fixed direction thereby reducing the need of the user to steer while fishing. The '835 patent was issued as a continuation of United States Patent No. 5,172,324 (the '324 patent).

Claim 1 of the '835 patent, the only independent claim alleged to be infringed provides as follows:

1. A heading lock coupled to a trolling motor producing a thrust disposed to pull a watercraft, said heading lock comprising:

a steering motor coupled to said trolling motor, said steering motor being disposed to affect the orientation of said trolling motor in response to input signals;

a steering circuit electrically coupled to said steering motor, said steering circuit begin (sic) disposed to generate said input signals to said steering motor in response to heading signals; and

a heading detector electrically coupled to said steering circuit, said heading detector being disposed to transmit said heading signals to said steering circuit.

Claims 2 and 5, which depend from claim 1, provide:

2. The heading lock of claim 1 wherein said heading detector includes a compass, said compass including a pair

---

1. In common usage the components used for pulling a fishing boat, including the motor which provides thrust for the boat, the motor which steers the boat, foot pedal controls, head, shaft and all other components are collectively referred to as a "trolling motor". For clarity in this opinion "trolling unit" is used to refer collectively to the entire system while components are referred to specifically, e.g., "thrust motor" and "steering motor".

of light emitting diodes, said compass further including a pair of photo-transistors mounted so as to be optically coupled to said pair of light emitting diodes.

\* \* \* \* \* \*

5. The heading lock of claim 4 wherein said trolling motor has a variable orientation, said orientation being selectable, the direction of said thrust being responsive to said orientation, wherein said heading detector generates a feedback signal indicative of the orientation of said trolling motor, and wherein said steering motor effects a change in said orientation in response to said feedback signal.

The preferred embodiment of the invention employs a compass physically mounted to the head of the unit which monitors the direction of the thrust motor. The description of the preferred embodiment identifies as one significant aspect of the invention the fact that the heading of a bow mounted thrust motor will be the same as the heading of the boat. The following are particularly relevant portions of the description of the preferred embodiment:

A boat having a thrust motor that pulls the boat (a motor that precedes the center of gravity of the boat in the direction of travel) will, if the heading of the thrust motor is held constant, eventually follow the thrust motor and travel in the heading of the thrust motor. Examples of thrust motors that pull a boat include: a bow mounted trolling motor (thrust motor) used with a fishing boat; (Column 3, Lines 17–24)

\* \* \* \* \* \*

Since the boat 104 always follows a course established by trolling unit 102 a single compass may be used to determine the current heading of both trolling unit 102 and boat 104. (Column 4, Lines 48–51)

Defendant's AutoGuide unit does not determine the heading by a compass mounted to the head of the trolling unit. Rather, the heading is detected by a two-axis magnetometer located in the foot pedal containing the user controls. The foot pedal of the AutoGuide unit contains a microprocessor which receives signals from the magnetometer and conveys steering signals to the steering motor. The head of the AutoGuide unit does not change with a change in the direction of the thrust motor. Instead the steering motor located in the head of the AutoGuide unit rotates the thrust motor shaft independently of the motor head.

Plaintiff designed and distributed its 1997 Marine Catalog which included a two page advertisement for its MinnKota AutoPilot trolling unit. On September 5, 1997 the United States Copyright office issued a Certificate of Registration for the advertisement. In the summer of 1996 defendant obtained a copy of the catalog and provided it to its advertising agent, Brothers & Company, for the purpose of developing an advertisement for AutoGuide. Defendant informed Brothers that the AutoPilot was JWA's version of the AutoGuide. Brothers developed an advertisement for the AutoGuide trolling unit providing the individual writers and illustrators with copies of the AutoPilot ad for reference.

The AutoGuide advertisement contains numerous similarities to the AutoPilot advertisement in text, graphics and layout. Each ad contains six pictures depicting the use of trolling units under specific circumstances. The pictures in the ads are strikingly similar. Each picture in both ads has accompanying text explaining the features of the trolling unit. The following are the text associated with similar pictures depicting five boats surrounding a point in a water body:

Plaintiff's ad: "AutoPilot is perfect for trolling or casting along sand bars and points. When you get to the end, just point AutoPilot down the other side and start fishing. AutoPilot will lock onto the new heading and take you where you pointed—automatically!"

Defendant's ad: AutoGuide is great for trolling along points and sand

bars. When you reach the end, simply turn AutoGuide down the other side and start fishing. AutoGuide locks onto the new heading and takes you where you want to go.

Other text comparisons reveal the same type of similarity.

## MEMORANDUM

Defendant seeks summary judgment on plaintiff's patent infringement claims arguing that its AutoGuide unit falls outside the properly interpreted elements of claim 1 of the '835 patent. Plaintiff contends that the defendant's trolling unit contains each and every element of claim 1 properly construed and, even if outside the literal language of claim 1, the AutoGuide unit employs the equivalent of the elements of that claim.

Plaintiff seeks summary judgment on the copyright claim on the basis that there is no factual dispute based on defendant's access to the copyright material and the similarities between the two that there was copying. Defendant argues that it is entitled to summary judgment because the factual material contained in plaintiff's advertisement is not subject to copyright and because the similarities are not sufficient to support a finding of infringement in light of the factual nature of the material.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Patent Infringement

Literal patent infringement analysis consists of two steps. First, the patent claims must be interpreted or construed to determine their meaning and scope. Second, the properly construed claims are compared to the device accused of infringing. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995). The first step of this analysis, claim construction, is a matter of law exclusively for the court. *Id* at 970–71. Since claim construction is exclusively a matter of law and since there is no dispute concerning the operation of defendant's allegedly infringing trolling unit, it is clear that the question of infringement may appropriately be resolved on summary judgment.

■ A device which does not literally infringe each element of a patent claim may nevertheless be found to infringe if it contains the equivalent of each claimed element which is not literally present. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146 (1997).

An analysis of the role played by each element in the context of the specific patent will thus inform the inquiry as to whether a substitute element matches the function, way and result or the claimed element, or whether the substitute element plays a role substantially different from the claimed element. *Id.*

The Court now interprets claim 1 of the '835 patent as required to determine infringement by assessing the elements of the claim focusing on the interpretations advanced by defendant which would render the AutoGuide unit non-infringing. A determination is made as a matter of law whether the defendant's device infringes literally or under the doctrine of equivalents as to the specific element.

■ **"Heading Lock coupled to a trolling motor".** Defendant's AutoGuide unit clearly has this limitation contained in

the claim 1 preamble. A "heading lock" as defined in claim 1 consists of three elements—a steering motor, a steering circuit, and a heading detector. Each of those elements is present in defendant's device and each is "coupled" to the trolling motor. "Coupled" as that term is generally understood requires only that there be a connection between the various elements. It says nothing about the nature of the connection. So understood, it is clear that the AutoGuide steering motor, steering circuit and heading detector are coupled to the trolling motor.

There is no support in the language of the patent or the specification for a narrow definition of "coupled" limited to only a mechanical connection as suggested by defendant. In fact, claim 1 itself by referring to the steering circuit and heading detector as being "electrically coupled" defies the interpretation advanced by the defendant. The inventor similarly refers to light emitting diodes being "optically coupled" to photo transistors in claim 2. Clearly, the inventor used the term "coupled" in the broad sense and purposely limited the scope of the term when a particular type of coupling was intended.

Furthermore, defendant's interpretation ignores the fact that claim 1 addresses the heading detector only in the final element of the claim where electrical coupling is specified. There is no requirement for a mechanical connection between the thrust motor and the heading detector. The phrase "heading detector lock" used by defendant in support of its interpretation does not even exist in the patent.

■ The fundamental flaw in defendant's proposed interpretation, one repeated in various places throughout its argument, is reliance on the preferred embodiment to limit the scope of the patent claim. While the specification can appropriately be used to understand the intent of the inventor in using a particular word or phrase, it cannot be used to read a limitation into a claim apart from the need to interpret the meaning of an ambiguous word or phrase in the claim itself. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir. 1988). There is no such need here. Although it is true that the preferred embodiment of the invention did mechanically couple the heading detector to the head of the trolling unit such that it pivoted with the thrust motor, the specification also expressly provided that the claims were not intended to be limited by the preferred embodiment.

The plain intent of the preamble is to designate a device, consisting of the three named elements which are connected to a bow mounted trolling unit in a way that allows processing and communication of heading readings to a steering motor which adjusts the direction of the thrust motor to maintain a heading. Defendant's device satisfies this requirement.

■ **"Steering motor being disposed to affect the orientation of the trolling motor".** It is even more apparent that the this limitation is present in the AutoGuide. The AutoGuide contains a steering motor which changes the orientation of the propeller and the thrust motor which turns the propeller. Defendant's argument is that the term "trolling motor" includes not only the thrust motor but also the head of the unit which plays no part in propelling the boat. Once again, defendant finds no support for this interpretation in the language of the claims or specification, but only by reference to the fact that the preferred embodiment permits the head to pivot with the thrust motor.

The preamble to the claim refers to "a trolling motor producing a thrust disposed to pull a watercraft". But the head plays no role in producing thrust, only the motor does. The clear implication is that the thrust motor is the trolling motor within the meaning of the claims. In fact, the specification consistently refers to the "trolling unit"—not trolling motor—when referencing the entire assembly including the head. Furthermore, the specification at column 3, line 23, removes any doubt by

parenthetically defining trolling motor to be the thrust motor.

If defendant's construction were adopted, it is clear that a device which differed only in the fact that the head did not pivot with the thrust motor would infringe under the doctrine of equivalents. Only the orientation of the thrust motor is relevant to the change in direction of the boat. Pivoting the shaft which holds the thrust motor while permitting the head to remain stationary would achieve precisely the same result in precisely the same way. An obvious change in a detail irrelevant to the function of the invention is exactly the type of difference to which the doctrine of equivalents applies.

**"Heading detector being disposed to transmit the heading signals".** Defendant argues that its device avoids infringement under this limitation because it has no "heading detector" and does not transmit "heading signals" as those terms are properly interpreted. Specifically, defendant contends that "heading detector" as used in the '835 patent is limited to a compass and that "heading signals" are limited to measurements of the direction of the thrust motor. These proposed limitations are not apparent in the language of the claim and are in fact contradicted by the claim language and specification. Once again the only justification for defendants proposed interpretation is the imposition of aspects of the preferred embodiment upon the claims.

Beginning with the claim language, the question is whether the magnetometer employed in the AutoGuide unit is a "heading detector." It is difficult to conceive of a rational argument that it is not. The magnetometer detects a heading and is therefore a heading detector. Furthermore, the choice of the phrase heading detector rather than compass was plainly intended to broaden claim 1. This is made even more apparent by dependent claim 2 which is limited to a device "wherein said heading detector includes a compass." Such an additional limitation would be meaningless if the heading detector by definition in-

cluded a compass. An interpretation which would render other limitations meaningless is unreasonable. *Beachcombers v. WildeWood Creative Products, Inc.,* 31 F.3d 1154, 1162 (Fed.Cir.1994). Under any reasonable interpretation the magnetometer in the AutoGuide unit is a heading detector.

The argument that claim 1 requires that the heading detector detect the heading of the thrust motor rather than the boat is the defendant's most forcefully advanced position. Like all previous arguments, however, it finds no support in the claims language which requires only a heading detector which transmits heading signals. There is no reasonable way to find that defendants device does not transmit heading signals. The proposed interpretation also suffers from the same flaw as the previous argument—it would render an additional claim limitation entirely superfluous. Dependent claim 5 imposes as an additional limitation that the heading detector signal the direction of the thrust motor. Plaintiff's interpretation would already read the identical limitation into claim 1 thereby rendering claim 5 meaningless. A clearly unacceptable interpretation. *Id.*

Far from compelling defendant's interpretation the specification teaches that detecting the heading of the boat is essentially equivalent to detecting the heading of the direction of motor thrust in the case of a bow mounted motor. The significance of the invention is that unlike prior art which used a stern mounted thrust motor requiring detectors for both the direction of boat and thrust, a single heading detector alone is sufficient for a bow mounted motor. Indeed, the specification repeatedly uses the heading of boat and motor interchangeably, clearly demonstrating that either could be the subject of heading detection and that they are equivalent. Accordingly, defendants' interpretation that would incorporate an additional limitation into claim 1 must be rejected as inconsis-

tent with the language of the patent claims and unsupported by the specification.

This conclusion is not contradicted by the patent history as suggested by the defendant. It is undisputed that the inventor emphasized detection of the thrust motor heading in advocating for the granting of the '324 patent. This is consistent with the fact that the '324 patent claims each expressly included the limitation that the device detect the direction of thrust. The '835 patent continuation application sought approval of the broader claim 20 which contained no limitation requiring detection of the direction of thrust which became claim 1 of the '835 patent. No argument concerning detection of the direction of thrust was made in advocating for claim 20. Both the inventor and the examiner were obviously aware of the greater breadth of claim 20 and relied on an entirely different justification in allowing the claim. The prior arguments relating to a different claim do not suggest that the same limitations exist in what is now claim 1 of the '835 patent.

There remains defendant's contention that the construction of claim 1 to permit detection of the boat heading rather than the thrust motor heading must be rejected because it would render the claim invalid under 35 U.S.C. §§ 112 and 102(b). In relevant respects, § 112 requires that the specification be sufficient to allow one skilled in the art to recognize that the inventor invented what is claimed. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed.Cir.1998). Defendant's argument under § 102 is that plaintiff could not take advantage of the filing date of the parent '324 patent because the '324 specification is not sufficient to comply with § 112 as to the broadly interpreted claim 1 of the '835 patent. *Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.*, 112 F.3d 1561, 1564 (Fed.Cir.1997). Therefore, because AutoPilot units were on sale more than one year prior to the '835 application, defendant argues that the on sale bar of § 102(b) applied to render claim 1 invalid. Both arguments are without merit.

The specification for the '324 patent is in all relevant respects identical to that of the '835 patent so that there is a single issue whether that specification sufficiently supports the broader interpretation of claim 1. *Gentry Gallery* explained the scope of the § 112 limitation as follows:

It is a truism that a claim need not be limited to a preferred embodiment. However, in a given case, the scope of the right to exclude may be limited by a narrow disclosure.... [C]laims directed to a "distinct invention from that disclosed in the specification" do not satisfy the written description requirement.

134 F.3d at 1479 (citing and quoting *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed.Cir.1997)). In *Gentry*, the court limited a claim which would have permitted a different location for recliner controls because the claim and specification required a console between the seats the sole purpose of which was to house the controls. Accordingly, the location of the controls in the console was the basis for the patent and the broader claim locating them elsewhere was unsupported.

However, the '835 specification does not so limit the location of the heading detector. One skilled in the art could readily discern from the specification that detecting the boat heading is equivalent in the device to detecting the thrust heading. A primary aspect of the invention and disclosure is that a single detector, monitoring the direction of either boat or thrust motor provides sufficient heading information to support a heading lock on a bow mounted thrust motor. The fact that the preferred embodiment of the invention detects thrust heading does not negate the teaching that detecting the heading of the boat is another possible manifestation of the invention.

■ "**Heading detector electrically coupled to said steering circuit**". The final issue of interpretation is whether the "steering circuit" is limited to one in which the entire circuit lies within the head of the unit. There is no rational argument to support such an interpretation. Defen-

dants' device undoubtedly has a steering circuit which receives the heading signals, processes them and provides input signals to the steering motor. The fact that certain components of the steering circuit are in the foot pedal while others are in the unit head has no implication for infringement analysis. Defendants suggest no reason why such a separation makes the steering circuit something else or makes it not "electrically coupled" to the heading detector.

■ Having rejected each of the interpretations offered by the defendant it is clear that the AutoGuide trolling unit infringes each element of claim 1 of the '835 patent. While defendant's AutoGuide trolling unit differs in certain respects from defendant's AutoPilot unit and from the preferred embodiment of the '835 invention, it falls clearly within the elements of claim 1 or their equivalent. It is equally apparent that dependent claims 3, 4, 9, and 10 are infringed and defendants make no independent attempt to argue that these dependant claims which clearly read on defendants' AutoGuide trolling unit are not infringed if claim 1 is infringed. Accordingly, plaintiff is entitled to summary judgement on the issue of patent infringement.

*Copyright Infringement*

■ In order to establish a claim for copyright infringement plaintiff must establish: (1) that it owns a valid copyright in its 1997 Autopilot advertisement and, (2) that defendant copied it. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607 (7th Cir.1982). Plaintiff having obtained a Certificate of Copyright Registration on the work is entitled to the presumption that it is copyrightable. *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir.1994). Defendant concedes that the plaintiff owns a valid copyright in its advertisement.

The second element, copying, may be inferred when it is shown that defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work. *Id.* at 508.

In this circuit, as in most, the determination whether there is substantial similarity is made by the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the protectible expression by taking material of substance and value." *Id.* at 508–09 (quoting *Atari*, 672 F.2d at 614). It is undisputed that defendant had access to plaintiff's work. In fact, it is undisputed that plaintiff's work was provided directly to all who participated in creating the allegedly infringing work.

The only remaining issue is whether a reasonable jury could conclude that defendant appropriated no substantive material from the plaintiff's work. No reasonable jury could reach such a conclusion after comparing the two works. It is a significant understatement to say the works are "substantially similar". They are nearly identical in ways that could not possibly have been the result of independent creation. Nor do the creators of defendant's ads suggest that they were developed independently.

Defendant's only legal argument in opposition to summary judgment is that the material is so fact based, and the range of available expression to describe the features of the product are so narrow, that virtually no protection should be given to the ad. *See Alberto–Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705 (7th Cir.1972). But the materials at issue are far more creative and the copying much more apparent than those found non-infringing in *Alberto–Culver*. Plaintiff's ad included original drawings and creative text combined in a creative layout. Except for minor alterations designed to make the two ads non-identical, the defendant copied plaintiff's drawings, text and layout. Defendant certainly took creative as well as merely factual expression. No reasonable person confronted with the undisputed

facts and viewing the ads could conclude otherwise.

Plaintiff is entitled to summary judgment on the issue of copyright infringement. Whether plaintiff is able to establish any damages from the brief period of publication before the ad was withdrawn is not subject to resolution on summary judgment.

### ORDER

IT IS ORDERED that plaintiffs' motion for summary judgement is GRANTED on the issues of both patent and copyright infringement.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is DENIED.